| 72 | 240 |
| 73 | 536 |

| 72 | 240 |
| 110 | 429 |

| 72 | 240 |
| 120 | 448 |
| 120 | 451 |
| 72 | 240 |
| f137 | 467 |

| 72 | 240 |
| e148 | 108 |

| 72 | 240 |
| 156 | 113 |
| 156 | 512 |

ANTHONY SCHNEIDER v. THE CITY OF DETROIT.

*Municipal corporations—Railroa? crossings—Erection of bridge in. city street—Charter of Detroit—Damages.*

This case involves the right of the city of Detroit, under its charter as existing in 1885, to build a bridge for a crossing over a railroad track, in a public street in said city.

1. CHAMPLIN, J., filed an opinion, concurred in by LONG, J., *denying* such right, and affirming a judgment recovered by plaintiff for injury sustained thereby in the usual and ordinary enjoyment of his abutting property.

2. CAMPBELL, J., concurred in the result, as did SHERWOOD, C. J., and MORSE, J., but held, further, that the city may build bridges where necessary for a · safe passage, subject always to the payment of damages when it injures private property.

Error to Wayne. (Gartner, J.) Argued June 8, 1888. Decided November 1, 1888.

Case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*John W. McGrath,* for appellant, contended:

1. This is not one of that class of cases. where a *change* of grade has been made to the detriment of an abutting owner, no grade having been established on Thirteenth street prior to building the bridge, and the railroad tracks being from five to eight feet below the *natural* grade of the street. The. cases of *Larkin v. Saginaw,* 11 Mich. 88, and *Pontiac v. Carter,* 32 Id. 164, seem to dispose of this case.

*Corliss, Andrus & Leete,* for plaintiff, contended:

1. The construction of a sewer beneath, or structure above, a highway, cannot be considered as within the meaning of the phrase "improving a highway;" citing *Clay v. Grand Rapids,* 60 Mich. 451.

2. Municipal corporations are restricted to such powers as are expressly conferred by charter or legislative authority, and must be able to show express authority in their charter for the acts they assume to perform; citing Cooley, Const. Lim. 231.

3. The occupation of a highway by a railroad company running its tracks through the street, without authority, is actionable, if any actual damage ensues to the adjacent owners; citing *Railroad Co. v. Heisel,* 47 Mich. 401; *Riedinger v. Railroad Co.,* 62 Id. 29.

4. The right of an owner of a lot in a city to the use of the adjoining street is a property right, of which he cannot be deprived without just compensation; citing *Rude v. St. Louis,* 93 Mo. 408.

72 MICH,—16.

5. When obstructions in a street wholly, or to an unreasonable
extent, cut off communications to the street from abutting
property, the owner may recover damages; citing *Lackland v.
Railroad Co.*, 31 Mo. 181; *Bridge Co. v. Schaubacher*, 57 Id.
582; *Ferrenbach v. Turner*, 86 Id. 416.

CHAMPLIN, J.    The plaintiff is the owner of two lots
in the city of Detroit, each 30 feet in width, extending
from Lafferty street easterly 120 feet, to Thirteenth street,
upon which two cottages were erected fronting on Laf-
ferty street, prior to the opening of Thirteenth street, in
1881.

In 1881 the proper proceedings were had, and Thir-
teenth street was opened in the rear of plaintiff's lots;
about 16 feet in width being taken from these lots there-
for, by condemnation proceedings, for which he was fully
paid the damages awarded.    This gave to plaintiff two
frontages,—one on Lafferty and the other on Thirteenth
street.

At the time Thirteenth street was opened, it was pro-
jected across the right of way and tracks of the Michigan
Central Railroad Company, for which it was awarded
damages.    The road-bed and tracks of the railroad com-
pany are from five to eight feet lower than the natural
level of the land in Thirteenth street at the point of
crossing, and there are 12 distinct and separate railroad
tracks, crossing the line of Thirteenth street, in use and
operation.    The distance of plaintiff's premises from the
railroad is about 100 feet.

No crossing having been made prior to 1885, in that
year, by mutual agreement as to expense of construction,
the common council of the city of Detroit, by proper and
appropriate proceedings, declared and determined that a
bridge over the tracks of said Michigan Central Railroad
Company, on Thirteenth street, was and is a public
necessity; and thereupon such proceedings were had that

a bridge was constructed over and across the railroad track at the joint expense of the railroad company and the city; and all of the proceedings in the opening of said Thirteenth street, and in the erection and construction of the bridge, and of the approaches thereto, were in accordance with the resolutions and proceedings of the common council, and regular, but without the consent of the plaintiff.

The southerly approach to the bridge commences south of, and extends past, the plaintiff's premises, upon an ascending grade, occupying 32 feet in width of the street, which is 60 feet in width. It is carried up with stone abutments, filled between, and the westerly abutment is 13 feet from the east line of plaintiff's premises, and is from 6 to 8 feet in height in front of his lots, with an iron fence about 3 feet in height surmounting the abutment.

Plaintiff showed that the Thirteenth street frontage of his lots was the most desirable, and that by reason of the obstruction caused by the bridge the use of such frontage was impracticable, and against defendant's objection he was permitted to show that his premises were damaged by the flow of surface water upon them. This testimony as to damage caused by surface water was inadmissible, under the declaration, which counted solely upon the deprivation of the use of the highway caused by the obstruction.

The defendant offered to prove that prior to the construction of the bridge no grade had been established on this portion of Thirteenth street, but on plaintiff's objection such testimony was excluded as being irrelevant and immaterial.

The circuit judge, after reciting the facts, charged the jury as follows:

"Now, gentlemen of the jury, as far as the streets are

concerned, and the grading of the streets, there is no question but that the city of Detroit has the right to establish grades, and to change grades. The city has the right to make use of the streets for the common and ordinary purposes for which streets are used; but the city has no right to practically destroy the street in front of a man's house; and the question here is as to whether this street in front of the plaintiff's lot is not practically destroyed. Now, I shall hold, as a matter of law, that this space of about 13 feet between the plaintiff's lot and this abutment or approach to the bridge, this wall being built up there 8 or 10 feet high, that practically destroys the street as far as the plaintiff's lots are concerned. It only leaves him a space of about 13 feet.

"Now, the city of Detroit has constructed this; and, having done this, I shall charge you, gentlemen of the jury, in this case, that the only question for you to determine is as to whether the plaintiff's property has depreciated in price, and as to whether the putting of this street in the condition which it is admitted now to be, as to whether that has depreciated the value of plaintiff's property. If it did depreciate it,—if the practical destruction of this street, as far as this property is concerned, if this condition of affairs, has depreciated the plaintiff's property,—why, then, gentlemen of the jury, he is entitled to recover for such depreciation. So if you find that the construction of this bridge has depreciated the value of the plaintiff's property, then the next question for you to determine will be the amount of damages.

"Upon this question I have very little to say, and very little is necessary to be said. He is entitled to recover the difference between what his property was worth prior to the construction of that bridge there, and what it was worth after the bridge was constructed, and Thirteenth street left in the condition in which it has been since the construction of the bridge. So that, gentlemen of the jury, if you find that the property was depreciated by the construction of this bridge, you want to ascertain what the difference in the value of the property before and after was, and the plaintiff is entitled to recover what the difference is.

"I am requested by the counsel for the defendant to charge you that, under the declaration and pleadings in this case, the plaintiff is not entitled to recover. I shall refuse to give you that request, and I shall leave the

question to you as to whether this property was depreciated; if it was, it is for you to say how much it was depreciated in value."

The jury returned a verdict for the plaintiff.

If the common council of the city of Detroit had authority to construct the bridge over the railroad tracks, all their proceedings having been regular, and the bridge and approaches having been erected according to the plans adopted, the city is not liable in this action.

This was settled as the law in this State in *Pontiac v. Carter*, 32 Mich. 164, in an exhaustive opinion by Mr. Justice COOLEY, and concurred in by the whole Court. It has been 13 years since that opinion was delivered, and the law should not be overturned without the clearest conviction that the opinion then delivered was wrong, and that justice requires that it should be reversed. No new arguments have been advanced in behalf of the liability of the municipality in such cases, and while we are aware that, in particular instances, the rule then adopted may operate harshly, yet in a majority of cases it does not do so, and in many cities and villages public improvements could not be made without bankrupting the treasury, or imposing grievous taxation upon the property of citizens at large.

The declaration in this case does not question the authority of the common council, but virtually concedes the fact. It says:

"That heretofore, and for a long space of time, to wit, for the space of 20 years last past, and at the time of the injuries herein complained of, the said defendant was and still is a municipal body corporate and politic, and a city under the laws of the State of Michigan, and as such has supervision and control of the streets and highways within the limits of the city."

The charter of the city of Detroit provides that the common council shall have power to establish, open,

widen, and extend streets and avenues within the city, and to grade, pave, repair, and otherwise improve said streets and highways.   Local Acts of 1883, Act No. 326, § 33, chap. 7.

Having determined to open and extend Thirteenth street across the railroad company's tracks, and condemned the right of way therefor, is the authority necessarily implied that the council may cross the railroad at grade, or under or over the railroad tracks?   They are given power to establish the grade without restriction, upon streets where no prior grade has been established.

Section 38 of the same chapter authorizes the common council to establish, construct, repair, enlarge, and dis-continue, within the streets, avenues, etc., in said city, such bridges, etc., as the common council may see fit, with a view to the proper sewerage and drainage of said city.   This is the only section of the charter conferring in express terms authority upon the common council to erect a bridge within a street, and here such authority is restricted to the purpose of sewerage or drainage, and does not extend to the purpose of securing a safe crossing of a railroad track by erecting a bridge in the street.

"Bridges are usually part of the street or highway, and in this country the power of municipal corporations to build them, and their authority over them, are wholly statutory, and their duties in respect to them are either prescribed by statute, or spring from their powers.   There is no common-law responsibility on municipal corporations in respect to the repair of bridges within their limits; but where bridges are part of the streets, and built by the municipal authorities under powers given to them by the legislature, they are liable for defects therein on the same principles, and to the same extent, as for defective streets."   2 Dill. Mun. Corp. § 728 (579).

The duty attaching to the city of Detroit to keep these bridges over the railroads in repair, and the liability for injuries arising from its default, aside from the expense

incurred in erecting them, challenge the closest investigation to ascertain if any statutory authority exists in the common council to erect such bridges in the streets. It may safely be asserted that there is no express authority; and section 38, above referred to, by granting express authority to construct bridges within streets for certain specified purposes, by the well-known canon of construction, would seem to exclude the authority for any other purpose.

Is the authority implied from the section conferring power to grade, improve, or extend streets? It is familiar law that a municipal corporation possesses and can exercise no powers which are not granted in express terms, or those which are necessarily or fairly implied in or are incident to the powers expressly granted, or those which are essential to the declared objects and purposes of the corporation. 1 Dill. Mun. Corp. § 89 (55).

I do not think it is either expressly given or necessarily implied by the terms of the charter. The construction of bridges over railroads is not the ordinary or usual method of grading streets. The exercise of the power to erect such bridges in streets would necessarily involve quite an amount of abutting property in damage, and some entirely in destruction, for any beneficial use or enjoyment. Such consequences cannot be brought under the general power to grade streets, but must be provided for under the power of eminent domain. Private property cannot be appropriated for the public use without the necessity therefor is first determined by a jury under our Constitution, and compensation awarded and paid.

Doubtless the method of crossing a railroad by a viaduct is safer than a crossing at grade; and upon streets which are recognized thoroughfares, over which the public are almost constantly passing, such bridges would greatly

conduce to the public safety and convenience, and it would be wise for the Legislature to confer upon municipalities the authority to erect such structures in the streets, and condemn private property for that purpose, if necessary; but, until this is done by special enactment, I do not think it can be done under the power now conferred by the general authority to grade, make, repair, and improve streets. It follows that the city authorities had no right to erect the bridge in the street in question, so as to injure plaintiff in the usual and ordinary enjoyment of his property, and the city is liable to him for the injury for which he has complained in damages.

The testimony which was admitted, relative to the injury by the flow of water upon plaintiff's premises, was not injurious to defendant under the charge of the court, which confined the jury to the sole question of the depreciation caused by the obstruction of the street in front of plaintiff's property.

Under the view I have advanced above, of the want of authority in the city to construct the bridge, the rejection of the testimony offered by defendant, above mentioned, was not erroneous.

The judgment will be affirmed.

LONG, J., concurred with CHAMPLIN, J.

CAMPBELL, J.    I agree in the result arrived at by my Brother CHAMPLIN.    But I have no doubt the city may build bridges where necessary for a safe passage, subject always to the payment of damages when it injures private property, as was done here.

SHERWOOD, C. J., and MORSE, J., concurred with CAMPBELL, J.