HARPER *v.* CITY OF DETROIT.

1. RAILROAD CROSSINGS—SEPARATION OF GRADES.

Although an agreement between a city and a railroad company for the construction of a viaduct to carry a street across the track is for the purpose of obtaining a right of way over the track where there is no existing right of way, it is none the less subject to the provisions of Act No. 92, Pub. Acts 1893, and is not enforceable until the damages to abutting owners are fixed by judicial proceedings, or by compromise, under section 3 of the act.

2. SAME—DAMAGES.

The award of damages in an action by an abutting owner for injury to his land from a change of grade in the street for the purpose of carrying it across a railroad, made without a prior ascertainment of damages as contemplated by Act No. 92, Pub. Acts 1893, should be in gross, and not merely for the damage which has already accrued, since the statute contemplates an award in gross in proceedings instituted thereunder.

Error to Wayne; Hosmer, J.    Submitted June 12, 1896.    Decided July 28, 1896.

Case by Fred B. Harper against the city of Detroit for injuries to property caused by the erection of a viaduct. From a judgment for defendant on verdict directed by the court, plaintiff brings error.    Reversed.

*T. T. Leete, Jr.* (*Jasper C. Gates,* of counsel), for appellant.

*John J. Speed,* for appellee.

MONTGOMERY, J.    Plaintiff is the owner of the legal title to lot 78, on the south side of the Boulevard in the city of Detroit.    On the west side of plaintiff's lot is a side track of the Detroit, Grand Haven & Milwaukee Railroad Company.    Plaintiff bought the lot in 1894 for

the consideration of $1,400. At the time of his purchase the Boulevard had not been extended across the railroad company's grounds, but a proceeding was pending for the opening of the Boulevard, and a grade crossing over the tracks. A favorable verdict had once been rendered, but was afterwards reversed by this court, at the June term, 1892 (93 Mich. 58), and a new trial ordered. Before the case was again brought to trial, Act No. 92, Pub. Acts 1893, was enacted and became a law. On the 10th of July, 1894, an agreement between the railroad company and the city was entered into, and ratified by the common council, which agreement recited that the commissioners desired to secure a right of way, and that proceedings were pending in the recorder's court for that purpose, and proceeded to agree upon the terms, the railroad company first granting the right of way; the railroad company also agreeing to construct a viaduct, and the parties agreeing that the expense of maintenance and repair of so much of the viaduct as covered the right of way of the railroad company should be borne by the company, and the city agreeing that, within 30 days after the verdict of condemnation had been rendered in the recorder's court, it would pay the railroad company $1,500 for the right of way, and $13,869.59 for constructing the viaduct. The viaduct or bridge was constructed across the right of way, and the approach to it, in front of plaintiff's lot, was built with stone foundation columns, iron beams and girders, with roadway, walk, railing, and fence. The viaduct was about 20 feet high in front of plaintiff's lot, and occupied 50 feet in width of the Boulevard. To the east of plaintiff's lot 210 feet, it approached within 38 feet of the lot lines. The sidewalk line, as established by the commissioners of parks and boulevards, was 24 feet from the lot line. The sidewalk proper was 6 feet, making the outside line of the walk 30 feet from the lot line. There was testimony tending to show that the construction of this viaduct and approach was a serious damage to the plaintiff's abutting property. Indeed, the cir-

cuit judge stated, in directing a verdict for the defendant, that the fact that the viaduct was an injury to the property was established, but evidently proceeded upon the view contended for by the city counselor here,—that the damages which were originally paid for the highway or boulevard in front of plaintiff's lot included all damages which might result from changes of grade which the municipal authorities should determine were necessary or proper for the making or improving of the way; relying on the case of *City of Pontiac* v. *Carter*, 32 Mich. 164. Plaintiff's counsel, on the other hand, contend that the case should be ruled by *Schneider* v. *City of Detroit*, 72 Mich. 240.

Whether the case may be distinguished from *Schneider* v. *City of Detroit* we deem it unnecessary to determine. By the first section of the act of 1893, above referred to, it is provided that—

" Where any railroad crosses, or shall hereafter cross, any public street or highway, the separation of the grades at such crossing, by carrying such street or highway either over or under such railroad or railroads at the point of intersection, may be effected as follows."

Here follow the provisions for agreement between the parties. Section 2 contains the provision that "no such agreement shall be enforceable until the damages referred to in section 3 of this act are fixed by judicial proceedings, or by compromise, under said section 3." Section 3 provides that, when the common council of any city shall have entered into any such agreement, it shall be authorized to settle or compromise with any person having an interest in any lands abutting on that portion of the street or highway within the city of which the grade is to be changed according to the said agreement, and which may be damaged by the proposed change of grade. It further provides that, when an agreement cannot be effected, judicial proceedings may be taken to determine the necessity, and to award damages.

We think the proceedings for the separation of the grades should have been taken under this act, which was intended for the protection of owners of property abutting upon a highway, an injury to which would result from a separation of the grades. It is said by defendant's counsel that this act has no application, as the bridge in question was built in order to obtain a right of way, and where there had been no existing right of way. If this contention is sound, it would follow that if an agreement granting a right of way had been made on one day, and the agreement for separation of grades on the next, there would be liability on the part of the city, whereas, if both agreements are embodied in one instrument, no liability arises. We do not think the statute requires such a narrow construction. The railroad crosses the highway provided for in this agreement, and a separation of grades is also provided for in the agreement, and we think it is within the terms of the act.

A question was raised as to whether the award of damages should be in gross, or should only be for the damage which has already accrued to the use of the property. The statute of 1893 contemplates that, where such crossing is made, the damages shall be awarded once for all in that proceeding, and we think, whatever the rule might be otherwise, that where an action is brought to recover damages for failure to comply with this statute, by analogy, the rule provided by statute should control.

The judgment will be reversed, and a new trial ordered.

LONG, C. J., HOOKER and MOORE, JJ., concurred. GRANT, J., did not sit.