PHELPS *v.* CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS — RAILROADS — BRIDGING TRACKS — DAMAGES TO ABUTTING PROPERTY.

A city which proceeds, under charter provisions inadequate to confer the power, to construct a bridge over railroad tracks at a street crossing, is liable in damages to the owner of abutting property, the rental value of which is depreciated by the structure.

2. SAME—CONTINUING WRONG—LIMITATION OF ACTIONS.

The maintenance by a city of a bridge across railroad tracks, which it was without authority to construct, and which depreciates the rental value of abutting property, is a continuing wrong, for which the property owner may recover his damages arising within the period of limitations, although the right of action for the erection of the structure is barred.

Error to Wayne; Carpenter, J. Submitted April 19, 1899. Decided June 19, 1899.

Case by Ralph Phelps, Sr., against the city of Detroit, for the unauthorized maintenance of a bridge in front of plaintiff's premises. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*Edwin F. Conely, Orla B. Taylor,* and *Ralph Phelps, Jr.,* for appellant.

*C. D. Joslyn* and *Arthur Webster,* for appellee.

LONG, J. This is an action on the case to recover damages for the depreciation of the rental value of plaintiff's property by the action of the city in constructing a bridge on the highway in front of such premises over the Michigan Central Railroad tracks. The plaintiff is, and has been for many years, the owner of several lots, upon which houses have been constructed, fronting upon Fourteenth

avenue, in the city of Detroit, conforming to the grade of the street, and from which he had received large amounts of rent. In 1875 the defendant erected a bridge over the Michigan Central Railroad tracks, which cross Fourteenth avenue adjoining the plaintiff's premises. This bridge takes up the entire width of the street, except about five feet on each side, thus depriving the property of the benefits of the street as a street. The approaches to the bridge, which are immediately in front of the plaintiff's premises, are built of stone, iron, and earth, and vary from 10 to 40 feet in height. This bridge and its approaches have remained in this condition continuously since its erection, in 1875. It is admitted by the defendant that the erection of the bridge caused some damage to the plaintiff's property, but it is contended: (1) That there was never any liability whatever on the part of the city for damages occasioned by the erection of the bridge; (2) that, if there ever was any liability, the claim is barred by the statute of limitations. The court below concurred in these views, and directed the verdict in favor of defendant.

We cannot concur in either of these contentions. Since the decision of this court in *Schneider* v. *City of Detroit*, 72 Mich. 240 (2 L. R. A. 54), we have always supposed that the question of such liability was settled in this State. The charter provisions considered were similar to those in force in 1875, when this bridge was constructed. The facts in that case were identical with the present, but the question of the statute of limitations was not involved. The inquiry there was whether the common council of the city of Detroit had authority to construct the bridge over the railroad tracks; and it was conceded by Mr. Justice CHAMPLIN, who wrote the opinion, that, if the authority to build the bridge existed,—all the proceedings having been regular, and the bridge and approaches having been erected according to plans adopted,—the city would not be liable. The charter of the city under which the council claimed the right to construct the bridge provided that it (the council) should have power to establish, widen, and

extend streets and avenues in the city, and to grade, pave, repair, and otherwise improve the streets and highways. Section 33, chap. 7, Act No. 326, Local Acts 1883. The only section of the charter (section 38 of the same chapter) which then conferred in express terms upon the council the authority to erect a bridge in the street restricted that authority to the purpose of sewerage or drainage, and, as Mr. Justice CHAMPLIN there said, "did not extend to the purpose of securing a safe crossing of a railroad track by erecting a bridge in the street." He said further:

"Is the authority implied from the section conferring power to grade, improve, or extend streets? * * * I do not think it is either expressly given or necessarily implied by the terms of the charter. The construction of bridges over railroads is not the ordinary or usual method of grading streets. The exercise of the power to erect such bridges in streets would necessarily involve quite an amount of abutting property in damage, and some entirely in destruction, for any beneficial use or enjoyment. Such consequences cannot be brought under the general power to grade streets, but must be provided for under the power of eminent domain. Private property cannot be appropriated for the public use without the necessity therefor is first determined by a jury under our Constitution, and compensation awarded and paid. Doubtless the method of crossing a railroad by a viaduct is safer than a crossing at grade, and upon streets which are recognized thoroughfares, over which the public are almost constantly passing, such bridges would greatly conduce to the public safety and convenience, and it would be wise for the legislature to confer upon municipalities the authority to erect such structures in the streets, and condemn private property for that purpose, if necessary; but, until this is done by special enactment, I do not think it can be done under the power now conferred by the general authority to grade, make, repair, and improve streets. It follows that the city authorities had no right to erect the bridge in the street in question so as to injure plaintiff in the usual and ordinary enjoyment of his property, and the city is liable to him for the injury for which he has complained in damages."

The writer of the present opinion concurred with Justice CHAMPLIN. Mr. Justice CAMPBELL said in the case:

"I agree in the result arrived at by my Brother CHAMP-LIN. But I have no doubt the city may build bridges where necessary for a safe passage, subject always to the payment of damages when it injures private property, as was done here."

These views were concurred in by Justices SHERWOOD and MORSE.

The learned counsel for the defendant in the present case seem to have entirely misconceived what Mr. Justice CAMPBELL had in mind in adding what he did to the opinion. He agreed in the result,— that is, agreed that the city was liable for the damages sustained by the plaintiff, —and undoubtedly agreed also to the proposition that the charter provisions were not broad enough to warrant the action, and consequently the power, if it existed, must necessarily come from the right of eminent domain; that, this right not having been exercised, the city had acted without authority, and was a wrong-doer, and must respond in damages. But the learned counsel for the defendant say that—.

"Mr. Justice CAMPBELL must have had in mind the damages following a direct injury, such as was sustained by the plaintiff in *Ashley* v. *City of Port Huron*, 35 Mich. 296 (24 Am. Rep. 552), and not damages for incidental injury caused by changing the grade of a street or erecting a necessary bridge."

The views expressed by Mr. Justice CAMPBELL must be read in the light of the questions there involved, and the result which Mr. Justice CHAMPLIN reached, in which all the members of the court concurred.

Even if the city, in the present case, had been clothed with the power to construct this bridge by right of eminent domain, no such proceedings having been taken, it would be held liable for damages to abutting property. *Hoffman* v. *Railroad Co.*, 114 Mich. 316. In 1893 an act was passed by the legislature with special reference to

proceedings for the separation of grades. Act No. 92,
Pub. Acts 1893. In the case of *Harper* v. *City of De-
troit*, 110 Mich. 427, it appeared that the action was
brought to recover damages to abutting property in the
construction of a bridge by the city over certain railroad
tracks. No proceedings had been taken under the act of
1893 to condemn the property and fix the damages. It
was held that proceedings should have been taken under
this act, which was intended for the protection of owners
of property upon highways and streets; and that, such
proceedings not having been taken, the city was liable in
damages.

We not only think the case of *Schneider* v. *City of
Detroit* settles the question in favor of plaintiff's conten-
tion, but that upon principle the city must be held to
respond in damages to abutting property owners. The
city has the undoubted right to establish and change the
grades of streets, and to make use of them for the com-
mon and ordinary purposes for which they were intended;
but it has no more right to destroy the use and enjoyment
of the abutting property, for the benefit of a railroad com-
pany, and without compensation, than a railroad company
would have under like circumstances; and in such cases,
where damage is by injury aside from actual taking of
property, the rule is to make the party whole as far as
practicable.

But counsel for defendant contend that the action is
barred by the statute of limitations. The action was
brought to recover for injuries sustained by the main-
tenance of the bridge during the period of $3\frac{1}{2}$ years pre-
vious to the commencement of suit. The position of the
plaintiff is that the maintenance of the bridge is a continu-
ing wrong or nuisance, and that, though the right of
recovery for the original erection of the bridge has been
lost by the lapse of time, yet the right to recover for the
injury done during the last six years remains. On the
other hand, counsel for defendant contend that the bridge
in question is a permanent structure, and the injury to the

plaintiff, if any,— past, present, and future,— was ascertainable and complete as soon as the bridge was completed.

There are some authorities which 'seem to sustain the contention of counsel for defendant. In *Town of Troy* v. *Railway Co.*, 23 N. H. 83 (55 Am. Dec. 177), the rule was laid down that, whenever the nuisance is of such a permanent character that it will continue without change from any cause but human labor, the damage is original, and may at once be compensated; and that, therefore, no future action can be maintained as for a continuing nuisance. This rule has been followed in' some of the other States, but it has been criticised and repudiated by most of the courts of this country. It has never been the rule in this State.

In *Hoffman* v. *Railroad Co.*, *supra*, the question was squarely presented. There counsel for the railroad company claimed that a railroad, when once constructed, is of such a permanent character that it is to be presumed that it will remain permanently, and that whatever damages were done to the premises were done in 1880, and the owner of the abutting property was not only entitled to recover the damages which had then accrued, but for all that might thereafter accrue. The action was brought for damage to the abutting property in the reduction or diminution of its rental value for the six years prior to bringing the suit, on May 16, 1894. There had been no condemnation proceedings, and this court quoted with approval the following language from *Grand Rapids, etc., R. Co.* v. *Heisel*, 47 Mich. 393:

"There is no reason, and, so far as we can discover, no law, which allows the wrong-doer to cast any portion of an actual and appreciable loss on the party whom he injures. In such a case as this, it is in the power of the company, and always has been, to have the compensation settled once for all, and to get any benefit which the law attaches to such a method of ascertainment. Until this is done, the possession is a continuous wrong, for which, as intimated in our former decision, the amount accruing year by year is recoverable."

The plaintiff recovered her damages for the six-years rental prior to the commencement of suit. The judgment was affirmed, and it was said, "We think the principle announced by the court in the *Heisel Case* should control this case."

Not only is this the rule as settled in this State, but the same general rule obtains in most of the States. In the recent case of *City of Chattanooga* v. *Dowling,* 101 Tenn. 342, the supreme court of Tennessee had before it the like question. The court said:

"The question here presented is, Conceding the liability of the city to suit for the injury complained of, should all the damages have been recovered in one action by the injured party, or can he maintain successive suits until the nuisance is abated?   *   *   *   To hold that for such a nuisance the injured party could have only one action, in which he must recover all his damages, past and prospective, would not only be to assume that the wrong-doer will always persist in his misconduct, but would be in effect to give him a license to continue in it. The courts will do neither."

*Uline* v. *Railroad Co.,* 101 N. Y. 98 (54 Am. Rep. 661), was an action for damages occasioned by the unlawful maintenance of a railroad in front of plaintiff's premises, the grade being raised, etc. The road was built 40 years before the action was commenced. Two extra tracks were laid in 1874. Suit was brought in 1883. The case is in every respect like *Hoffman* v. *Railroad Co., supra.* The court held that it was a continuing wrong, and that successive actions might be brought for damages occasioned thereby. The court said, "The law will not proceed upon the assumption that a nuisance or illegal conduct will continue forever."

*City of Nashville* v. *Comar,* 88 Tenn. 415, was a decision by Mr. Justice Lurton, now of the United States court of appeals. He takes up the case of *Town of Troy* v. *Railway Co., supra,* and the cases of other courts which have followed that case since, and shows with great clearness that those cases are not only illogical, but that they

are in opposition to the great weight of authority. After speaking of the rule announced in the *Troy Case*, that "wherever the nuisance is of such a character that its continuance is necessarily an injury, and where it is of a permanent character, that will continue without change from any cause but human labor, there the damage is an original damage, and may be at once fully compensated," the learned justice says:

"This seems to us an artificial and arbitrary test. There are supposable nuisances which, by the effect of time, might at last abate themselves; but by far the greater number of trespasses, wrongs, and nuisances would continue indefinitely without the expenditure of human labor to remove or abate them. It is a rule which does not recommend itself by either its reasonableness, its certainty of application, or its justice."

He then cites many cases in support of his contention, and proceeds:

"This assumption that a wrong-doer is to be presumed, from the mere character of the work, to intend to continue in his wrong, and that he will not remedy his defective or unskillful work, is repudiated in the majority of the American cases."

We deem it unnecessary to quote from the multitude of cases cited in the briefs of counsel for the plaintiff here. The doctrine contended for by them is supported, not only by the great weight of authority in this country, but in England. Two English cases may be mentioned as supporting their contention: *Darley Main Colliery Co.* v. *Mitchell*, 11 App. Cas. 127; *Crumbie* v. *Wallsend Local Board*, L. R. 26 Q. B. Div. 503. The following cases in this country support the rule: *Town of Roxbury* v. *Railroad Co.*, 60 Vt. 121; *Inhabitants of New Salem* v. *Eagle Mill Co.*, 138 Mass. 8; *Ramsdale* v. *Foote*, 55 Wis. 557; *Reed* v. *Mayor, etc., of Birmingham*, 92 Ala. 339; *McGowan* v. *Railway Co.*, 23 Mo. App. 203; *Fell* v. *Bennett*, 110 Pa. St. 181; *Reid* v. *City of Atlanta*, 73 Ga. 523; *Sloggy* v. *Dilworth*, 38 Minn. 179 (8 Am. St.

Rep. 656); *Omaha, etc., R. Co.* v. *Standen,* 22 Neb. 343; *Schulte* v. *Transportation Co.,* 50 Cal. 592. We close this part of the case by the further citation from the opinion of Mr. Justice Lurton, in which we concur:

"It seems to us that the true rule deducible from the authorities is that the law will not presume the continuance of a wrong, nor allow a license to continue a wrong, when the cause of the injury is of such a nature as to be abatable either by the expenditure of labor or money; and that, where the cause of the injury is one not presumed to continue, that the damages recoverable from the wrongdoer are only such as have accrued before action brought, and that successive actions may be brought for the subsequent continuance of the wrong or nuisance."

The judgment below must be reversed, and a new trial granted.

The other Justices concurred.