## DEAN *v.* ANN ARBOR RAILROAD CO.

1. HIGHWAYS AND STREETS — RAISING GRADE OF CROSSING RAILROAD—INJUNCTION—PECULIAR DAMAGES.

   One whose frontage on a street would be lessened by the raising of the grade of a railroad crossing the street in the block in which his lots are located, and whose passage out of the block in the direction of the railroad would thereby be cut off, increasing the cost of trucking to and from his warehouses on the lots, and depreciating the value of his property, suffers a special damage different from that of the public, authorizing him to maintain a suit for injunction.

2. SAME—ABUTTING OWNERS—COMPENSATION.

   Power in the charter of Ann Arbor to designate grades of railroads coming into the city, and to establish a grade for streets and sidewalks, does not authorize the city to in effect vacate part of a street by allowing a railroad to cross it on an embankment above the grade of the street, thereby cutting off an abutting owner's access to his property, without providing him compensation.

Appeal from Washtenaw, Lockwood, J., presiding. Submitted February 23, 1904. (Docket No. 91.) Decided September 13, 1904.

Bill by Sedgwick Dean and Henry S. Dean against the Ann Arbor Railroad Company, the city of Ann Arbor, and others to restrain the obstruction of a certain street. From a decree for complainants, defendants appeal. Affirmed.

*Jasper C. Gates*, for complainants.

*A. J. Sawyer & Son* (*A. L. Smith*, of counsel), for defendant railroad company.

*Thomas D. Kearney*, for defendant city.

The following is the plat referred to in the opinion:

MOORE, C. J.  A reference to the plat and a reading of the opinion filed by the circuit judge will give an understanding of the questions involved in this case.  The opinion reads:

"The bill in this case is filed to enjoin the Ann Arbor Railroad Company and the city of Ann Arbor and its officers from building an embankment in and across First street, in the city of Ann Arbor, and from closing or diverting First street, and for a decree compelling the defendants to keep First street from Williams street to Liberty street in good repair and in a condition reasonably safe for public travel.  A long time prior to 1882, William S. Maynard's Addition to the village (now city) of Ann Arbor had been made, and the streets therein, including First street, had been opened and used as public streets.

"In 1872 the common council of the city of Ann Arbor granted permission, by ordinance, to the Toledo, Ann Arbor & Northern Railroad Company, the predecessors of the present corporation, to construct its tracks through the city of Ann Arbor and across many of its streets, fixing the grade of the railroad at the then existing grade of each street crossed.  At this time Roger Mathews and Mary Mathews were owners of lots 12, 13, and 14 of block 3 south of Huron street, range 2 east, according to the plat of Wm. S. Maynard's Addition.  These lots are situated on the east side of First street, in the middle of the block between Williams street on the south and Liberty street on the north, and had a frontage of 150 feet on First street, with no frontage on any other street.  After the passage of said ordinance, the owners of these three lots conveyed to the railroad company a right of way across said lots, described as being 25 feet wide on each side of the center line of the railroad as located.

"The railroad was constructed between 1872 and 1876, its general course through the city of Ann Arbor being north and south, but at the point where it crossed First street its course was north, 22 degrees west; the crossing at First street being at an angle of 22 degrees.  The right of way took the westerly part of lot 14 and the southwest corner of lot 13, the easterly line of the said right of way intersecting the easterly line of First street near the center of lot 13.  The grade of the railroad as then constructed was at the grade of the street, which was but little, if any, above the level of the surrounding lots.  In

1882 the complainants purchased from the said Roger and Mary Mathews said three lots 'except' the land in the southwest corner conveyed to the railroad company. This land purchased by the complainants exclusive of the railroad right of way had a frontage of about 75 feet on First street. The complainants, who are dealers in groceries, crockery, and oils, doing a wholesale and retail business in the city of Ann Arbor, built warehouses and oil tanks upon these lots, which are used in storing goods handled in their business. The defendant railroad company furnished a siding so that cars could be unloaded at the warehouse on these premises. The freight house of the railroad company stands upon the east side of First street, south of Williams street, and the complainants in shipping out goods from the warehouse truck them south on First street, across the railroad tracks and across Williams street to this freight house. Their business has gradually increased since 1882, and they are now handling very large quantities of merchandise each year in these warehouses and oil tanks. The buildings and improvements placed upon these lots by complainants for the purpose of accommodating their business cost about $8,000. The grade of the railroad has remained substantially as first constructed at the crossing of First street.

"On October 1, 1902, the common council of the city of Ann Arbor passed an ordinance entitled:

" 'An ordinance relative to changing the course and grade of certain streets, and elevating the tracks of the Ann Arbor Railroad Company.'

"This ordinance was duly approved, published, and accepted by the railroad company as therein provided. A copy of this ordinance is attached to the bill of complaint, and it provides, in brief, for raising the grade of five east and west streets in the southerly portions of the city, at the points where they are intersected by the tracks of the railroad company, from $1\frac{1}{2}$ to about 7 feet, for lowering the grades of other streets at the intersection of the said railroad tracks from 2 to 3 feet. It provides for steel viaducts above Felch street, Miller avenue, Huron, Washington, and Liberty streets, and at the foot of Ann street. These last-mentioned streets are east and west streets, and are north of the premises of complainants. This ordinance contemplates the raising of the grade of the Ann Arbor Railroad from Williams street north from 9 to 15 feet above

its present grade.   The provision in said ordinance in relation to First street is as follows:

" 'That First street be diverted so as to intersect Liberty street west of the present right of way of the said company.'

" The next day after the passage of this ordinance the complainants notified the defendant railroad company that they would resist by legal proceedings, if necessary, any attempt to do the work contemplated, and that they claimed that said ordinance was not valid.

" The defendant railroad company proceeded to do work in preparation for raising its grade, and had done a small amount of work on its grade in the way of surveys, testing the foundations, and the like, prior to the filing of this bill.   This bill was filed March 7, 1903.   Upon its filing a preliminary injunction was issued, restraining the defendant from building any embankment either in First street, in said city of Ann Arbor, between Williams and Liberty streets, or in front of the premises of the said complainants, and from in any wise closing or diverting First street, or placing any obstructions therein, and from interfering with or obstructing the said complainants, or either of them, in their free use of said First street, in either direction, north or south, from their said premises.   This injunction was later dissolved on motion of the defendants.

" The defendant railroad company has continued to do work in raising its grade, and has raised a portion of its grade north of Liberty street, and put in foundations for the abutments in the streets over which viaducts are to be constructed.   It has purchased and has upon the ground a large amount of steel and material for the construction of the viaducts, and is going forward in the work in raising its grade.   It has now expended large amounts in doing the work and buying the material.   At the time this case was heard no change had been made at the intersection of First street or south thereof.   The evidence in this case shows that it is the plan and purpose of the railroad company to put in all the viaducts provided in the ordinance except perhaps the one at the foot of Ann street, which street does not cross the railroad track, and to provide for the separation of the grades of their track and the streets on Felch street, Miller avenue, Huron, Washington, and Liberty streets.   In each case the street is to pass under the railroad track.   That the east and west streets south of Liberty street will cross the railroad track

at grade, the grade of the streets being raised in most cases to bring it to the proposed grade of the railroad. That at the intersection of First street it is proposed to build a grade for the railroad from 12 to 13 feet higher than it is at present, and higher than the level of the street. That the railroad company proposes that, if it finds it necessary, in order to retain this embankment upon its 50-foot right of way, to build foot walls of masonry to hold the base of the embankment. The embankment will occupy the whole of the 50-foot right of way of the railroad company, and will occupy all of that part of First street falling within this 50 feet. The crossing of First street is a long one. If this embankment is made, it will occupy most of the street in front of complainants' premises. The north line of their premises projected west will intersect the east line of the embankment at about the middle of the street. The only portion of the street in front of any of these premises unoccupied by the embankment will be a right-angled triangle, with a base of about 75 feet along the east line of the street, and a perpendicular of about 32 feet along the north line of the premises projected west. In other words, all the street left open in front of these premises would be about 32 feet wide at the north line, and would narrow to nothing at a point about 75 feet south of the north line. All the balance of this street in front of complainants' premises would be entirely obstructed, and practically vacated and abandoned as a public way. It also appears from the evidence that no provision is to be made for the crossing of the railroad track on First street; that the portion of First street within the 50-foot right of way will be entirely obstructed; that it will be impossible to cross the tracks of the defendant railroad company on First street when the contemplated grade is completed. It also appears from the evidence in this case that the intention to open First street along the westerly side of the right of way of the defendant railroad company to Liberty street has been abandoned. It appears that after the passage of the grade ordinance proceedings were instituted for the purpose of opening this street, but that the common council of the city of Ann Arbor determined not to open it. There is no evidence in this case tending to show a purpose on the part of the city to vacate or abandon that portion of First street north of the railroad right of way and between it and Liberty street. The driveway which provides in-

gress and egress from complainants' property on First street with trucks and wagons is near the north line of lot 12. If the embankment proposed is constructed across First street, the complainants can still get to this driveway into their property on First street from the north, but cannot get to their property on First street from the south. The portion of First street north of the railroad right of way will be a cul-de-sac. It appears from the evidence in this case that the value of the complainants' premises for the purpose for which they are used would be depreciated if the said embankment is constructed, and if the complainants continue to use their premises for the purpose for which they have been used since they have owned them, and they will be compelled to travel considerably farther in getting to the freight house of the railroad company, and that the added expense of trucking their goods from their warehouse to the freighthouse by reason of the increased distance would amount to several hundred dollars each year."

It is the claim of appellants that the city is the owner of the fee in the street. This is denied by complainants. Appellants say it is not important. Their position is that complainant had:

"The right to use First street in common with the public—that is, the right to use First street between Liberty and Williams streets with their teams and vehicles—but manifestly this right they enjoyed in common with all the rest of the public who might have occasion to pass that way. So far as this right was interfered with, they have no standing in court to pray for an injunction. It is well settled that in cases of this kind an injunction will not be granted except to one who has suffered a special damage or inconvenience, different in kind from that suffered by the rest of the public. Differences in degree are of no importance here. *Henry* v. *Railroad Co.*, 116 Mich. 314 (75 N. W. 886); *Buhl* v. *Union Depot Co.*, 98 Mich. 596 (57 N. W. 829, 23 L. R. A. 392); *People, ex rel. Bristol,* v. *Supervisors of Ingham Co.*, 20 Mich. 95.

"The complainants, as the owners of abutting property, are not entitled to any compensation for damages for any injury to the use of the street that is common to the general public. * * *

"It cannot be honestly denied that all the means of access that were ever owned by the complainants are preserved to them in this instance intact. That right would

137 MICH.—30.

be in no way infringed upon by the building of the embankment contemplated under this ordinance.   The same mode of ingress and egress would remain to and from First street, and therefore, under the authorities cited, the complainants are not entitled to any redress, and certainly not entitled to an injunction."

Counsel for complainants do not admit this contention, and the learned circuit judge reached a different conclusion.   He is justified by the record in saying that for many years the complainants had a frontage on First street of 75 feet, and, when they reached the street at any point in front of their premises, could travel either north or south thereon.   The result of the proposed action of defendants will be to make of this street a cul-de-sac, very materially shortening the frontage of complainants, and making it impossible for them, when they reach the street, to travel south thereon.   The conclusion cannot be avoided that, if this proposed improvement is carried out, the value of complainants' property will be greatly depreciated, and the expense of conducting their business will be greatly increased.   These are effects limited to the property of complainants and its business, and not common to the public.

It is said by counsel:

"Subdivision 10 of section 88 of the charter of Ann Arbor (Act No. 331, Local Acts 1889) reads as follows:

"'Tenth. To determine and designate the routes and grades of any railroad coming into or passing through said city, and to restrain and regulate the use of locomotives, engines, and cars upon any railroad within the city.'

"Subdivision 31 reads as follows:

"'Thirty-first. To establish a grade for streets and sidewalks and cause the sidewalks to be constructed in accordance with the same.'

"Is there any doubt but that these subdivisions of this section authorize the city of Ann Arbor not only to designate the route of the Ann Arbor Railroad, but to fix and establish the grade, and to fix the grade of the streets over which it crosses?   And by these provisions it may raise the grade of the railroad above or beneath the grade

of the streets over which it passes. The ordinance in question simply establishes the grade of the Ann Arbor Railroad through the city of Ann Arbor, and changes the grade of certain streets, and authorizes the railroad to build viaducts over certain streets; and clearly the charter authorizes such an ordinance"—citing *City of Pontiac* v. *Carter*, 32 Mich. 164; *City of Detroit* v. *Beckman*, 34 Mich. 125 (22 Am. Rep. 507); *Larned* v. *Briscoe*, 62 Mich. 393 (29 N. W. 22).

The facts do not disclose that the city was simply attempting to change a grade for highway and sidewalk purposes. The effect of what it attempts to do is to vacate a considerable portion of a street, and deprive not only the complainants, but the public, of the use of it, and give it over to the use of a railroad company. The principles involved are fully discussed in *Schneider* v. *City of Detroit*, 72 Mich. 240 (40 N. W. 329, 2 L. R. A. 54), *Harper* v. *City of Detroit*, 110 Mich. 427 (68 N. W. 265), and *Phelps* v. *City of Detroit*, 120 Mich. 447 (79 N. W. 640), which cases are controlling.

Desirable as this improvement undoubtedly is, the complainants cannot be compelled to submit to the loss which they would be obliged to sustain if it was made without due compensation.

The decree of the court below is affirmed, with costs.

The other Justices concurred.