## CITY OF DETROIT *v.* GRAND TRUNK RAILWAY OF CANADA.

1. HIGHWAYS AND STREETS—IMPROVEMENTS—DAMAGES—EMINENT DOMAIN.

    In separating the grades of a street and railroad under 1 Comp. Laws, §§ 4229-4261, as amended by Act No. 268, Pub. Acts 1909, the municipality does not exercise the power of eminent domain, and damages are not determinable in accordance with rules governing awards in cases where private property is taken for public purposes.

2. EMINENT DOMAIN—CONSEQUENTIAL DAMAGES.

    Consequential injuries resulting from a separation of grades in accordance with statutory authority do not constitute a taking of private property within the meaning of the Constitution.

3. SAME—STREETS—IMPROVEMENTS.

Improvements authorized by law, made by a city, in or upon public streets, impose no liability for damages resulting to adjacent property owners, unless the legislature so provides.

4. SAME—CONSTITUTIONAL LAW—STREETS.

The legislature has complete control over the highways of the State and what is done lawfully upon them cannot be considered a nuisance, and consequential injuries resulting from what is done are *damnum absque injuria*.

5. SAME—MUNICIPAL CORPORATIONS.

Under the statute the city of Detroit has power to make such separation of grades where railroads cross public streets, and a remedy is provided for consequential injuries to abutting property.

6. SAME—CONSTITUTIONAL LAW.

Nor is the statute in violation of the constitutional provisions relating to the exercise of eminent domain.

7. SAME—RAILROADS—SEPARATION OF GRADES.

Act No. 268, Pub. Acts 1909, providing that in separating the grades of streets and railroads at crossings, the petition may be filed within one year after the separation is completed, has a retroactive effect and is not unconstitutional.

Certiorari to the recorder's court of Detroit; Connolly, J. Submitted June 28, 1910. (Docket No. 160.) Decided November 11, 1910.

Petition by the city of Detroit for the separation of grades of Sixteenth street and certain railroads crossing it. A judgment for defendants dismissing the petition is reviewed by petitioner on writ of certiorari. Reversed.

*P. J. M. Hally* and *Richard I. Lawson*, for petitioners.

*Henderson, Martindale & Grose*, for respondents.

Sixteenth street, in Detroit, is crossed, formerly at grade, by three railroads. Pursuant to the statute (2 Comp. Laws, §§ 4229–4261), the city of Detroit entered into an agreement with the railroad companies for a sep-

aration of grades, at various points, including one on Sixteenth street. The common council, by ordinance, established a new grade for this street. Work incident to the separation of grades was begun June 3, 1907, and was completed August 29, 1908. The statute petition was not filed by the city until August 19, 1907, and when filed it included the proposed separation of grades, not only at Sixteenth, but also at Fourteenth and Fifteenth streets. In June, 1908, a jury was impaneled and sworn to consider the matters alleged in the said petition and was discharged, and the petition was dismissed under a construction of the statute which required a separate proceeding and jury with respect to each street. The action of the recorder was approved by this court. *City of Detroit* v. *Dailey,* 156 Mich. 9 (120 N. W. 25). A separate petition relating to the separation of grades on Sixteenth street was filed April 21, 1909, a jury was impaneled January 31, 1910, and some testimony having been introduced, and it appearing that the improvement had been completed before the petition was filed and before the necessity therefor had been determined by a jury, the jurisdiction of the recorder was challenged by one or more of the respondents. It did not appear, and it is not claimed, that in changing the grade of the street any abutting property was taken, unless the consequential injuries attending the change of grade are to be considered as amounting to a taking.

By Act No. 268, Pub. Acts 1909, the statute above referred to was amended, and as amended it provides that, if the petition is filed within one year after the separation of grades is accomplished, it shall be deemed a compliance with the law. A written opinion was filed by the recorder, which appears in the record, the conclusion and effect of which is that, because the petition was filed after the work of separating the grades was finished, the petitioner was a trespasser *ab initio* and as such liable to respond in damages to respondents in a proper forum. With respect to the amending statute, the recorder held

it could not operate retrospectively, and, if it could, the legislature had not the power to pass a law permitting private property to be taken before the public necessity therefor is determined by a jury. The opinion proceeds upon the theory that the effect of the improvement is a taking of private property for public uses within the meaning of the Constitution. The contention of respondents in this court is expressed in their brief in the following language:

"If these works proceed under the power of eminent domain, they are restricted and governed by the constitutional provisions of both the Constitution of 1850 and 1909. If they do not so proceed, then the doctrine of *City of Pontiac* v. *Carter* (32 Mich. 164) applies, and the legislature would be free to adopt such remedial legislation, and to amend it, as it chose, because vested rights would not be divested, and the rules of procedure and damages would be wholly within the legislative discretion. But if the power is exercised under the power of eminent domain, if it is subject to those constitutional provisions touching this power, then neither the legislature nor the courts may abridge or infringe upon the procedure commanded by the Constitution, nor upon the damages fixed by the Constitution, which demands full compensation. Restriction by legislation of full and adequate compensation would violate the constitutional provisions relating to eminent domain, and the constitutional provision against depriving a person of his property without due process of law."

OSTRANDER, J. (*after stating the facts*). The act "to provide separate grades for railroads and public highways and streets where railroads intersect such highways and streets," which became effective August 28, 1893 (Act No. 92, Pub. Acts 1893), has a general purpose, which is very plain; but the legislative methods for effecting the purpose are not simple, and some of the provisions of the law are not harmonious. For example, it seems to be wholly incongruous to require that the necessity for the separation of grades according to a plan which embraces such an improvement at several parallel streets should be sub-

mitted to successive juries; the necessity for a separation of grades at one of the streets involving its necessity at the other streets.   This incongruity is more apparent now when a failure to determine the necessity for the improvement ahead of the work of improvement at a particular street is relied upon by owners of abutting property to support the claim that the city has proceeded unlawfully, is a trespasser, and liable to respond in damages as such. And yet very good reasons may be suggested for requiring different juries to assess the damages which the act contemplates shall be paid.   Considering all of the provisions of the act together, we felt obliged to hold, in *City of Detroit* v. *Dailey*, already referred to, that successive juries were contemplated by the law.

Since proceedings were first instituted in the city of Detroit to bring about the separation of grades in conformity with the act, this court has been repeatedly called upon to determine disputes arising, in most cases, upon the proper construction of the law.   Attention has necessarily been given to the particular questions raised upon the several records and argued by counsel, and just as necessarily decision has been influenced by the accord of opposing counsel with regard to the meaning of certain provisions of the law and the apparent soundness of the arguments when they have disagreed.   *City of Detroit* v. *C. H. Little Co.*, 141 Mich. 637 (104 N. W. 1108); *Id.*, 146 Mich. 373 (109 N. W. 671); *City of Detroit* v. *Railway*, 156 Mich. 106 (120 N. W. 600); *City of Detroit* v. *Railroad Co.*, 156 Mich. 121 (120 N. W. 592); *City of Detroit* v. *Snyder*, 156 Mich. 511 (121 N. W. 258); *Id.*, 159 Mich. 227 (123 N. W. 1106).   It is said by counsel for the city that in none of these cases was the necessity for the improvement and the damages to be awarded determined before the improvement was actually undertaken. In all of them an award was made by a jury in proceedings under the act, and the points presented for decision related to the class of persons, determined by interest in property, entitled to damages and the measure of the

damages recoverable under the statute. Whatever may be thought of some expressions to be found in the opinions which have been filed and to which reference will be made, there can be found in the decisions themselves no reasonable support for the idea that in making the improvements the city exercised the power of eminent domain, or that it was acting without proper authority. The contention that damages under the act should be measured in accordance with rules governing awards in cases where private property is taken for public uses has been expressly overruled. *City of Detroit* v. *Railway, supra.*

Counsel for respondents find in some of the earlier opinions of the court, in cases involving improvements in highways, and in some of those delivered in cases arising under the particular act, support for the idea that the consequential injuries resulting from such improvements as are here involved constitute a taking of private property within the meaning of the Constitution and require affirmance of the order appealed from. A brief reference will be made to them. In *Schneider* v. *City of Detroit*, 72 Mich. 240, 245 (40 N. W. 329, 331 (2 L. R. A. 54), it was said by Mr. Justice CHAMPLIN:

"If the common council of the city of Detroit had authority to construct the bridge over the railroad tracks, all their proceedings having been regular, and the bridge and approaches having been erected according to the plans adopted, the city is not liable in this action."

*City of Pontiac* v. *Carter*, 32 Mich. 164, is cited and, in the case supposed by the learned justice, would, it is stated, control. In that case the city had carried Thirteenth street over the tracks of the railroad company by a bridge erected in the street. What is denied is the authority of the city, express or implied, to erect the structure under the conferred powers to grade, improve, or extend streets. This reasoning of two of the justices left the city liable in damages as for a taking of private property and in this result the other justices concurred. See *Phelps* v. *City of Detroit*, 120 Mich. 447, 450 (79 N. W.

640).  In *Harper* v. *City of Detroit,* 110 Mich. 427 (68 N.
W. 265), very like in its facts to *Schneider* v. *City of De-
troit,* it was held that the damages recoverable were those
fixed by the act now under consideration.   In *Ranson* v.
*City of Sault Ste. Marie,* 143 Mich. 661 (107 N. W. 439,
15 L. R. A. [N. S.] 49), it was expressly found that the
city "was not, and did not, in fact, suppose that it was
proceeding in the exercise of any charter power of the
city over its streets or to erect bridges."   The language
relied upon in the opinion in *City of Detroit* v. *Snyder,*
156 Mich. 512 (121 N. W. 258), the case being an appeal
from an award in proceedings to separate grades, is:

"This statute did not contemplate a grade to be made
for the purpose of ordinary travel, unobstructed by rail-
road crossings or canals.   It contemplated a change made
necessary by the use of the streets for railroad crossings.
Such improvements do not come within that rule of the
common law which gives no compensation or damages."

*Schneider* v. *City of Detroit* is cited.   The city urged
that, because no grade had been established on the street
upon which Snyder's property abutted, he was not entitled
to any compensation under the statute, and the contention
was determined in the language following that above set
out, which was:

"We are therefore of the opinion that the term 'grade'
in this statute refers not alone to those duly established by
engineers and municipalities, but also to the grades of
highways and streets as in common use."

This decision was made some time after *City of Detroit*
v. *Railway* had been decided, and Justice GRANT, who
wrote the opinion, took part in and approved the decision
in the earlier case.   In the *C. H. Little Co. Case,* which
was twice before this court, the article and sections of the
Constitution relating to the exercise of the right of emi-
nent domain were cited in one opinion, and various au-
thorities, all relating to condemnation proceedings, were
cited in the other opinion.   What was involved in the
first appearance here of the case was the right of a lessee

to recover damages, and at its last appearance there was involved the measure of the statute damages.

Whatever authority there may be for the doctrine that, if a city acts without legislative authority with respect to its streets, it must respond in damages to those whose use and enjoyment of abutting property is in consequence restricted or injuriously interfered with, none of the cases relied upon and none that have been brought to our attention support the proposition that improvements and changes made in the streets, by legislative authority, impose any liability unless the legislature so declares. In *Austin* v. *Railway*, 134 Mich. 149 (96 N. W. 35), there was a disagreement of the judges as to the proper result to be declared; but it is apparent there would have been no disagreement if it had been conceded that the grade of the highway had been changed by proper authority. The consequences of the acts complained about in that case were not unlike those which are relied upon here to show injury. The case is, in any event, an authority opposed to the contentions of respondents here. It seems to be unnecessary to say that the legislature has complete control over the highways of the State, that what is done in and upon them by lawful authority cannot be considered a nuisance, and that consequential injuries resulting from what is so done are *damnum absque injuria*. The fact that some of the consequential injuries resulting where property is actually taken in condemnation proceedings are similar in character to those resulting where grades are separated furnishes no argument to support the proposition that property is "taken," within the meaning of the constitutional provisions here relied upon, when such consequential injuries follow a separation of grades. The decision of *City of Pontiac* v. *Carter*, is only an application of the rule that if the municipality has power, derived from the legislature, to accommodate streets to a new use consistent with and in aid of the general use to which streets are devoted, abutting owners, whose property is not taken, have no remedy for consequential injuries un-

less the legislature gives them one.   It is obvious that the city of Detroit had power to make a separation of grades. It is equally obvious that the legislature provided a remedy for injuries to abutting property.   In previous decisions we have considered the nature and extent of the remedy, and we see no reason for modifying views which have heretofore been expressed.   If respondents were suing to recover damages, the statute measure would furnish the measure of their recovery.   It may be added that the amendment of 1909 was plainly intended to have a retro-active effect and may be given such effect without doing violence to settled rules.   *Matter of Andersen,* 178 N. Y. 416 (70 N. E. 921).

The order and decree of the recorder's court is reversed, and the record will be remanded, with directions to proceed in accordance with the statute.   The printed record does not advise us whether all of the respondents appeared, answered, and took part in the hearing below.   The city will recover costs, and the order of this court will recite which of the respondents are liable therefor.

Bird, C. J., and Moore, Brooke, and Blair, JJ., concurred.