AUSTIN *v.* DETROIT, YPSILANTI & ANN ARBOR RAILWAY.

134   149|
f137  ¹ 25|
134   149|
j148   118|

1. HIGHWAYS—ELECTRIC RAILWAYS—SERVITUDE.

The use of a township highway for an electric railway is not an additional servitude.

2. SAME—CHANGE OF GRADE.

An electric-railway company may change the grade of a highway so that it can operate its line, without compensating the adjoining proprietors, where it does so with the consent of the highway authorities, and of a plank-road company which maintains the road. MONTGOMERY and MOORE, JJ., dissenting.

3. SAME—LOCATION OF TRACKS.

A landowner cannot compel an electric road to locate its tracks in the center of the highway.

Error to Wayne; Hosmer, J. Submitted October 8, 1901. (Docket No. 10.), Reargued January 14, 1903. Decided July 14, 1903.

Case by Hugh Austin against the Detroit, Ypsilanti & Ann Arbor Railway for damages to plaintiff's farm caused by grading the highway. From a judgment for plaintiff, defendant brings error. Reversed.

*Cutcheon, Stellwagen & Mackay*, for appellant.

*J. Emmet Sullivan* and *Edward M. Vining*, for appellee.

HOOKER, C. J. The defendant is the owner of an electric trolley line between Detroit and Ann Arbor, its railroad being laid in the public highway, in accordance with statutory authority, under licenses from the respective municipalities along its route. The township of Nankin granted the right to construct the road in the following language, viz., "Grants and conveys unto Thomas D. Kearney, attorney, his associates, successors, and assigns, hereafter to be organized into a corporation under the laws of the State of Michigan, exclusive right and privilege of constructing and maintaining perpetually a street railway for the transportation of passengers and light freight along, upon, or adjacent to the highway known as the 'Chicago Road,' * * * with all the necessary and convenient turnouts, switches," etc., subject to the rights in said highway of the Detroit & Saline Plank-Road Company. It also provides that "the track or tracks of said railway shall be so laid as to obstruct as little as possible the free passage of vehicles and carriages along said highway, and so as to best accommodate the public traffic."

This highway was one maintained by the Detroit & Saline Plank-Road Company, under the plank-road act (2 Comp. Laws, chap. 173), and the railroad was built with the consent of said company. The plaintiff owned and occupied a farm upon said highway, along the east

side of which ran the Flint & Pere Marquette Railroad, which crossed the highway in question a few rods east of the plaintiff's house. The railroad was about eight feet above the natural surface of the ground bordering the highway, which its trains crossed above grade by means of a bridge, which was 15 feet long. To make room for the passage of teams under the bridge, the highway was graded down some feet at the intersection of the railroad, the cut extending westerly to a point about 15 feet west of plaintiff's dwelling. By consent of the plank-road company, the traveled portion of the highway was widened and lowered, by grading, to accommodate the electric road, and a new bridge, both wider and longer than the old, was built by, and at the joint expense of, the two railroad companies. The electric line was laid along the north side of the highway, near to the line of the street; nearly the entire width of the roadway, including the bed of the railway track, being cut down to a uniform grade, so that the cut reached the level of the highway, as it theretofore existed, some rods west of the plaintiff's house, which left plaintiff's premises some three or four feet higher than the roadway where the cut was deepest; the ground being cut back to within a foot or two of his fence at the surface, and sloping thence to the track. A flight of five or six steps was built by the railroad company from the track up to the level of the land in front of plaintiff's house. This action was brought to recover damages for an alleged injury to plaintiff's premises, and defendant has appealed from a judgment of $475 in plaintiff's favor.

It is the settled law that the public right to the highways goes to the extent of authorizing their use for the general purposes of public travel, and, as conditions change, the way may be adapted to new wants and methods of travel, including the equipment and use of electric railroads. The courts hold with great unanimity that the public right, when acquired, contemplates the use of the way for such purposes, and that the adjoining proprieter must suffer the contingent disadvantages of

a change of grade, and that the use of the highway for an
electric line is not an additional servitude.   See *Fuller* v.
*City of Grand Rapids*, 105 Mich. 529  (63 N. W. 530);
*City of Pontiac* v. *Carter*, 32 Mich. 164; *Dean* v. *Railway Co.*, 93 Mich. 330 (53 N. W. 396); 10 Am. & Eng.
Enc. Law (2d Ed.), 1125; *Green* v. *Railway Co.*, 78 Md.
294 (28 Atl. 626, 44 Am. St. Rep. 288).

The plaintiff's contention in this case is that the railroad
company had no right to cut off or impair his access to
the highway from his premises by lowering the grade for
its track below the highway as it then existed, and by
laying it so close to the line of the highway as to subject
his fence and land to the danger of sliding into the high-
way.   The supreme court of the State of Ohio has enun-
ciated the doctrine that an abutting proprietor might
recover damages if his access to the highway was im-
paired (*Cincinnati, etc., R. Co.* v. *Village of Cummins-
ville*, 14 Ohio St. 523), which is consistent with the rule
that damages arising from a change of grade are recover-
able, which rule we understand to obtain in that State, in
opposition to the view generally taken.

Had this railway been laid in the center of the street,
without change of grade, and so constructed by filling be-
tween the rails as to make it feasible for the public to drive
upon and over it at will, no one will claim that it would be
an additional servitude; or, had the line as built been so
filled as to make it practicable for vehicles to be driven
upon it as upon other parts of the way, the same would be
true, except for the change of grade.   We take judicial
notice that in rural districts the traveled portion of the
road is but a small part of the land within the limits of
the highway.   It is manifest that in such places the rail-
way may be more safely operated if built at one side and
used separately.   It is evident from the franchise that
the authorities thought so in this instance, and required
it to be kept away from the traveled portion.   There
was therefore no necessity for making a smooth way
between the rails and adjoining the track, and it might

have been imprudent to do so, thereby inviting travelers to unnecessarily drive in a place of danger. So long as it does not offer a comparatively insuperable obstacle to the use of the portion of the highway occupied by it for purposes reasonably necessary, and reasonable provisions are made by crossings for ingress and egress over it to and from adjoining premises, the owner of such premises cannot complain, if he could in any case, which we do not decide.

It is said that the grade of the street was made necessary by reason of this railway. It is well settled that an adjoining proprietor cannot complain if the grade of a highway is changed. The authorities may lawfully facilitate travel by such changes. We have held that a street railway is not an additional servitude, and the reason is that it is a provision made by public authority to facilitate public travel. It is the use of the highway, for the original purpose, by modified and changed vehicles and methods. If the public weal requires it, it is as much within the power of the public to lessen the grades for street cars as for wagons or automobiles. To say that the township or company might have changed this grade to improve its wagon road for the latter, without recompense to adjacent proprietors, but that it could not do so for a street railway, or that a street railway is an additional servitude when the authorities permit the highway to be graded down for the purpose, and not when it is made to conform to the pre-existing surface of the highway, is to make a distinction where none should in justice exist.

We are of the opinion that the location of a railway in the center of the highway cannot be required by an abutting proprietor. There is a manifest propriety in separating, so far as possible, this from other uses of the highway. In the present case the franchise required it, and apparently the public authorities acquiesced in its location. The same may be said of the grade, so far as the public had control over it. The authorities authorized the change in the bridge, and the plank-road company, which repre-

sented the public, in a sense, in the maintenance of the highway, and might lawfully grade the highway, for its full width, under the statute permitting the organization of plank roads, through its president (who was also president of the defendant), consented to the widening and lowering of its grade, with a view to the improvements authorized by law and the township.

The statute authorizing street and suburban railways, like that providing for steam roads, is predicated upon public necessity. It is not to be assumed that such roads are burdens upon the inhabitants, but that they confer benefits to tho general public. Such companies as are provided for are not created primarily for their own benefit, but for a desirable public purpose. It is not the province of courts to assume that these statutes are to be so strictly and technically construed as to prevent full measure of efficiency. One of these statutes requires the railway to be laid at the same grade as the highway. This is a proper provision, but we disbelieve that it was the intention that where this was not feasible, in-view of existing grades, no railway could be constructed, or that the adjacent proprietors acquired rights to compensation in consequence. It is not unreasonable to suppose that the construction of a safe and satisfactory railroad may require some changes in the grade of the highway as theretofore existing, *e. g.*, by filling or cutting and widening the graded portion, by lessening the grade of hills, adapting the road under bridges to the proper level, etc. The public authorities have the right to do these things when there is no railroad, and to say that they must do it where it is only made imperative by the necessities of the use of the street for a railroad, is too narrow a construction. The law expressly recognizes the desirability of lessening grades for all uses of a highway; but highway improvements are necessarily gradual, owing to the expense. When a railroad is made, it is a substantial, expensive, and permanent improvement. It must not only be laid at grade, but, under any fair construction of the statute, it must be kept at grade. There

is a manifest propriety, if not a necessity, that the township authorities provide for such general grades as may be advisable, and cause them to be made at that time; and there is, to our minds, no impropriety in imposing upon the railroad the burden of these changes for the general public good.

It is said that the contract does not include any such provision. An attempt to include specifications of all such changes would be attended with much detail, and perhaps difficulty. We think it not unreasonable or improper to infer that the railroad company would not be allowed to make extensive changes in the grade of highways without the approval and acquiescence of the public authorities, who, as we have shown, have the authority to cut down the grade, without further compensation to abutting proprietors. So long as the authorities do not object and take steps to prevent such changes as will permit of a proper construction of the road that they have authorized, we must assume consent, and the abutting proprietors cannot complain.

It is inferable from the proof in this case that the steam railroad would have been an insuperable obstacle to laying this road at the pre-existing grade, as there was not room for the passage of the cars beneath it without lowering the highway at the bridge, and it seems to have been necessary to widen the highway at that point. At all events it was done, and the trolley company paid one-half of the cost of an expensive bridge to accomplish crossing below the steam-road grade. The township authorities had the power to consent to the construction of this road, and this necessarily implies consent to a readjustment of highway grades, within reasonable limits, with the sanction of those having authority under the law to make them. The consent to construct this road, and the acquiescence of all concerned in the change of grade, is a sufficient consent. The public cannot question it, and the plaintiff has no right of action in consequence.

The case differs materially from that of *Nichols* v.

*Railway Co.*, 87 Mich. 361 (49 N. W. 538, 16 L. R. A. 371), for there the road was not made to conform to the grade of the highway. Here it is required. 2 Comp. Laws, § 6450.

The cases of *Green* v. *Railway Co.*, 78 Md. 294 (28 Atl. 626, 44 Am. St. Rep. 288), *Briggs* v. *Railroad Co.*, 79 Me. 363 (10 Atl. 47, 1 Am. St. Rep. 316), and *Peddicord* v. *Railway Co.*, 34 Md. 464, sustain the authority of a plank-road company to change its grade without subjecting itself to liability, and, if it may do this, no good reason is suggested for holding defendant liable for doing the same, with the assent of the plank-road company, in a project for the benefit of the highway authorized by law. The case of *Uline* v. *Railroad Co.*, 101 N. Y. 98 (4 N. E. 536, 54 Am. Rep. 661), is analogous upon the question of the authority of the railroad company to act under a delegated power.

There are many assignments of error in this case, but we think the more important questions are the following:

1. Is the construction and operation of this railroad an additional servitude?

2. Has an abutting owner a right to compensation by reason of the lowering of the grade of the highway?

3. Was it unlawful to place the railroad to the side of the highway, in proximity to plaintiff's premises, and is he entitled to compensation therefor?

4. Does the fact that the highway in question was owned by a plank-road company, or the changing of the grade of the highway to accommodate the railroad, affect the question?

We think all of these questions are answered by our discussion of the subject. The jury should not have been allowed to infer that the construction of the railroad constituted an additional servitude because of its location, or by reason of the excavation made for it, or for the impairment of access to plaintiff's premises by reason thereof.

The court did not err in instructing the jury that damages were not recoverable because of the prevention of the hitching of teams in front of plaintiff's premises, under

the declaration.  *Hobart* v. *Railroad Co.*, 27 Wis. 200 (9 Am. Rep. 461).

We think it unnecessary to discuss other questions.

The judgment is reversed, and a new trial ordered.

CARPENTER and GRANT, JJ., concurred with HOOKER, C. J.

MONTGOMERY, J. (*dissenting*).  The defendant is the owner of an electric trolley line between Detroit and Ann Arbor, its railroad being laid in the public highway, in accordance with statutory authority, under licenses from the respective municipalities along its route.  The township of Nankin granted the right to construct the road in the following language, viz., "Grants and conveys unto Thomas D. Kearney, attorney, his associates, successors, and assigns, hereafter to be organized into a corporation under the laws of the State of Michigan, exclusive right and privilege of constructing and maintaining perpetually a street railway for the transportation of passengers and light freight along, upon, or adjacent to the highway known as the 'Chicago Road,'" etc., subject to the rights in said highway of the Detroit & Saline Plank-Road Company.  It also provides that "the track or tracks of said railway shall be so laid as to obstruct as little as possible the free passage of vehicles and carriages along said highway, and so as to best accommodate the public traffic."

This highway was one maintained by the Detroit & Saline Plank-Road Company, under the plank-road act (2 Comp. Laws, chap. 173), and the railroad was built with the consent of said company.  The plaintiff owned and occupied a farm upon said highway, along the east side of which ran the Flint & Pere Marquette Railroad, which crossed the highway in question a few rods east of the plaintiff's house.  The railroad was about eight feet above the natural surface of the ground bordering the highway, which its trains crossed above grade by means of a bridge, which was 15 feet long.  To make room for the passage of teams under the bridge, the highway was

graded down some feet at the intersection of the railroad, the cut extending westerly to a point about 15 feet west of plaintiff's dwelling.  By consent of the plank-road company, the highway was widened and lowered, by grading, to accommodate the electric road, and a new bridge, both wider and longer than the old, was built, by, and at the joint expense of, the two railroad companies.  The electric line was laid along the north side of the highway, near to the line of the street; nearly the entire width of the roadway, including the bed of the railway track, being cut down to a uniform grade, so that the cut reached the level of the highway, as it theretofore existed, some rods west of the plaintiff's house, which left plaintiff's premises some three or four feet higher than the roadway where the cut was deepest; the ground being cut back to within a foot or two of his fence at the surface, and sloping thence to the track.  A flight of five or six steps was built by the railroad company from the track up to the level of the land in front of plaintiff's house.  This action was brought to recover damages for an alleged injury to plaintiff's premises, and the defendant has appealed from a judgment of $475 in plaintiff's favor.

The plaintiff's contention in this case is that the railroad company had no right to cut off or impair his access to the highway from his premises by lowering the grade for its track below the highway as it then existed, and by laying it so close to the line of the highway as to subject his fence and land to the danger of sliding into the highway.  The defendant contends, on the contrary, that the plaintiff's property has been subjected to no additional servitude. In the case of *Detroit City Railway* v. *Mills*, 85 Mich. 634 (48 N. W. 1007), the court held that the construction of an ordinary electric railway in the streets of a city, corresponding to the grade of the street, was not an additional servitude.  But in *Nichols* v. *Railway Co.*, 87 Mich. 361 (49 N. W. 538, 16 L. R. A. 371), it was held that the street-railway act confers no power upon a railway company to construct a road along the line of a highway within two

or three feet of the side of the road, where the roadbed does not conform to the grade of the street, but is built upon a grade with cuts and fills,—in that case the cuts and fills being two feet or thereabouts. It is sought to distinguish that case from the present in this: It is said that, while defendant's road does not conform to the grade as it existed when the contract with the township was made, the grade has since been changed by defendant with the consent of the plank-road authorities, so that now the track is laid at grade. This is in effect saying that, while the defendant is not authorized to build a roadbed for its own use not conforming to the general grade, it may change the grade of the entire road with the track, without regard to its effect upon adjacent owners, if it can get authority from the plank-road company to do so.

A reference to the statutes may throw light upon this question. Section 6446 provides that a company may construct, use, maintain, and own a street railway for the transportation of passengers in and upon the streets and highways of any township, upon such terms and conditions as may be agreed upon by the company and the township board. Does this statute contemplate that the township authorities may turn over to the street-railway company the authority to wholly change the grade of its streets? I apprehend that no one will assert this authority without at least some misgivings. But, even if this power be deemed to be granted to the township board by the section in question, it is sufficient for the purpose of this case to say that the township authorities never exercised that power, and never assumed to confer upon the defendant railway the right to change the grade of this street. The grant is set out above. It is simply a grant of the privilege of constructing and maintaining a street railway along the line of, upon, or adjacent to the highway known as the "Chicago Road," subject to the rights in said highway of the Detroit & Saline Plank-Road Company, and contains a provision that the track or tracks shall be so laid as to obstruct as little as possible the free passage of

carriages and vehicles along said highway, and so as best to accommodate public travel. One might look long and earnestly, but in vain, to find within the four corners of this contract any suggestion of a right in the company to wholly change the grade of this highway.

But it is said that the plank-road company might change the grade for its own purposes, and that it has granted the right to the defendant company to change the grade, and that therefore the injury to plaintiff's property is *damnum absque. injuria.* Here, again, a reference to the statute is not unprofitable. The legislature has provided, by sections 6470, 6471, that a street or electric railway may agree with a toll-road company for a purchase of all or any portion of the rights and franchises of such company, and, in case of failure to agree, there máy be a condemnation; but the statute contains the express provision that the provisions of this act shall not be so construed as to affect the rights of abutting property owners or the rights of the public in such highways. In view of this provision, can it be said that the plank-road company may agree with the street-railway company that, for its own purposes, it may regrade a portion of the highway in a-manner which injuriously affects the adjacent owner, and this without authority from the township board? We think it clear that no such right exists.

Independent of this statutory provision, the difficulty to my mind is as obvious. The right of the plank-road company is a special privilege and right, it terminates with its charter, its use of the highway is limited to such use as is essential for the purposes indicated by its charter, and it is reasoning in a circle to say that it may, under cover or pretense of enlarging its own uses of the power, evade the requirement of the statute which limits the use of a street railway to such as is agreed upon with the township board, and confer authority upon the street railway which the township board withholds.

For the reasons stated, I think it clear that the plaintiff was entitled to recover such damages as he sustained.

Other questions are raised by counsel, which may be briefly considered. The declaration claimed damages to the plaintiff's land by reason of the excavation of that portion of the highway adjacent to his premises. Complaint is made that the circuit judge, in his charge, stated that this railway track, constructed as it was, constituted an additional servitude, and that evidence was given that the fence and soil would probably fall because of the excavation, and also as to the inconvenience in going up the steps onto the plaintiff's land. We think it may be said of this testimony that it did no more than describe the situation, and was not intended to afford a basis for damages. In fact, an inspection of the photograph of the premises, which was introduced in evidence, would of necessity exhibit these conditions and authorize the inferences drawn by the witnesses.

The court charged the jury that the occupation and excavation of that portion of the road was unlawful, and that the plaintiff was entitled to recover such damages as would compensate him, limiting the damages to the amount which the land actually depreciated in value on account of the peculiar construction of the road, and distinctly stated to the jury: "It is the damages for the excavation, and not for the operation of the road." He also instructed the jury that the plaintiff was not entitled to recover any damages because of the fact that teams could not be hitched in front of his house, as that claim was not covered by the pleadings. We think this instruction fully protected the defendant's rights, and that it was not error to permit the jury, in determining the damages caused by the excavation, to take into account the fact that plaintiff's fence would be more likely to fall by reason of such excavation.

We think that no error was committed to the prejudice of the defendant, and the judgment should be affirmed, with costs.

MOORE, J., concurred with MONTGOMERY, J.