CITY OF DETROIT v. GRIGG HANNA LUMBER & BOX CO.

1. CONSTITUTIONAL LAW—LOWERING OF STREET GRADES—DUE PROCESS.

   The lowering of street grades is not the taking of abutting property without due process of law; hence a city may proceed to lower the grade and then begin appropriate proceedings under the grade separation act (1 Comp. Laws 1929, § 4481 et seq.).

2. EMINENT DOMAIN—CHANGE OF STREET GRADE—QUESTION FOR JURY.

   In condemnation proceedings to effectuate widening of a street and the lowering of its grade in connection with a grade separation, owner of abutting property, part of which was taken for an abutment for the grade separation, was not entitled to have jury consider question of necessity of change of street grade.

3. SAME—COMMON LAW—STATUTES—CHANGE OF STREET GRADE—DAMAGES.

   At common law an adjacent landowner may not recover damages for injury caused by changing the grade of a public street in front of his premises, but the rule is now changed by statute and the abutting owner is now entitled to recover damages in the prescribed statutory proceedings (Act No. 114, § 9, Pub. Acts 1925, as added by Act No. 335, Pub. Acts 1931).

4. SAME—CHANGE OF GRADE—GRADE SEPARATION ACT—DAMAGES.

   An adjacent landowner may not recover damages from the change of grade of a street in a condemnation proceeding but his remedy is found in the grade separation act (Act No. 114, § 9, Pub. Acts 1925, as added by Act No. 335, Pub. Acts 1931; 1 Comp. Laws 1929, §§ 4481–4513).

5. SAME—DAMAGES—LOWERING OF STREET GRADE.

   In city's condemnation proceedings to acquire land for widening street and lowering of its grade and for grade separation purposes, no damages were recoverable by the abutting owner for the change of grade, his remedy therefor being under the grade separation act (Act No. 114, § 9, Pub. Acts 1925, as added by Act No. 335, Pub. Acts 1931; 1 Comp. Laws 1929, §§ 4481–4513).

6. SAME—ABSENCE OF A JUROR—NEW TRIAL.

New trial was properly refused defendant in condemnation proceedings where although one juror was absent from deliberations for a week it was shown the jurors merely assembled but did not deliberate, no prejudice having been shown.

7. SAME—CONSTITUTIONAL LAW—CHANGE OF GRADE—DAMAGES—STATUTES.

The constitutional rights of a property owner were fully protected in condemnation proceedings where court instructed jury they must first find necessity for the taking of the property involved and, if that were found, then they should fix the compensation, and where a change of grade of the street was also involved it is not a violation of his constitutional rights that a separate statute provides for determination of consequential damages resulting therefrom as that is a matter wholly apart from the taking of property for public use (Const. 1908, art. 13, § 2; Act No. 114, § 9, Pub. Acts 1925, as added by Act No. 335, Pub. Acts 1931; 1 Comp. Laws 1929, §§ 4481–4513).

WIEST, J. dissenting.

Appeal from Recorder's Court for the City of Detroit; Brennan (John V.), J. Submitted October 24, 1940. (Docket No. 111, Calendar No. 41,355.) Decided February 7, 1941.

Petition by the City of Detroit to condemn property for the widening and lowering of Michigan Avenue. Damages were awarded to Grigg Hanna Lumber & Box Company and others. From confirmation of verdict and denial of motion for new trial, defendant Grigg Hanna Lumber & Box Company appeals. Affirmed.

*Paul E. Krause,* Corporation Counsel, and *Bert R. Sogge,* Assistant Corporation Counsel, for plaintiff.

*Kenneth M. Stevens,* for defendant.

SHARPE, C. J.   In August, 1939, the common council of the city of Detroit declared a public improvement to be necessary in the city of Detroit and to take private property for an easement for street purposes.   On September 1, 1939, the city of Detroit, under provisions of title 8, chapter 1 of its charter, filed a petition in the recorder's court to condemn property for the purpose of effectuating the widening and lowering of Michigan avenue.

In this petition a portion of appellant's property which is located on the northeast corner of Michigan and Bangor avenues was condemned for the purpose of erecting a grade separation.   There is no dispute as to the value of the land actually taken or cost of construction of a part of a building taken, nor is it disputed that the property condemned is to be used as part of an abutment for a grade separation structure.   On October 9, 1939, the Michigan public service commission entered an order authorizing such grade separation.

During the proceedings for assessment of damages, the trial judge ruled that the jury could not take into consideration the necessity for the improvement, the change in the grade in Michigan avenue; and that damages caused by the grade separation could only be recovered by a subsequent proceeding under the grade separation act.   The jury awarded appellant damages in the amount of $1,160.

Grigg Hanna Lumber & Box Company appeals and contends that it was entitled to have both the necessity for the project and the necessity for the taking of its land for the project submitted to the jury.   The city of Detroit urges that the necessity for changing the grade of the street is not a part of the condemnation case to acquire lands for a public purpose.

The record shows that the city of Detroit approved the agreement for the grade separation and the Michigan public service commission found the same to be necessary.

In *Grigg Hanna Lumber & Box Co.* v. *State Highway Commissioner,* 294 Mich. 346, 354, we again said:

" 'We have repeatedly held that the lowering of street grades is not the taking of abutting property without due process of law. * * * The city may proceed to lower the grades and then begin appropriate proceedings under the grade separation act. 1 Comp. Laws 1929, § 4481 *et seq.,* as amended.' *A. M. Campau Realty Co.* v. *City of Detroit,* 268 Mich. 417."

Under the above authority there was no necessity for the jury to decide the question of change of street grade. Appellants next urge that it did not receive its proper amount of damages. The trial court held that appellant must split his damages: recover part of its direct damages in the condemnation case and the balance of its direct damages and all damages that flow to the remainder of his land from the project under 1 Comp. Laws 1929, § 4514 *et seq.,* as amended by Act No. 335, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 4514 *et seq.,* Stat. Ann. § 9.1141 *et seq.*).

The city of Detroit contends that appellant was not entitled to grade separation damages in the condemnation case.

At common law an adjacent landowner may not recover damages for injury caused by changing the grade of a public street in front of his premises, *In re City of Detroit,* 261 Mich. 278, but the rule is now changed by statute and the abutting owner is now entitled to recover damages in the prescribed statutory proceedings. See Act No. 114, § 9, Pub. Acts 1925, as added by Act No. 335, Pub. Acts 1931 (Comp.

Laws Supp. 1940, § 4521–1, Stat. Ann. § 9.1149). It is our opinion that an adjacent landowner may not recover damages from the change of grade in a condemnation proceeding. His remedy may be found in the grade separation act. Act No. 92, Pub. Acts 1893, as amended.*

In *A. M. Campau Realty Co.* v. *City of Detroit,* 268 Mich. 417, 420, we said:

"The consequential damages resulting from a subsequent lowering of the grade could not have been considered in the main proceeding. Plaintiff calls our attention to a number of cases where the question of damages for lowering of the grade was considered in condemnation cases or not long after the proceedings were concluded. We have repeatedly held that the lowering of street grades is not the taking of abutting property without due process of law. *City of Detroit* v. *Railway Co.,* 163 Mich. 229; *Mead* v. *Railroad Co.,* 174 Mich. 521. The city may proceed to lower the grades and then begin appropriate proceedings under the grade separation act."

In *Grigg Hanna Lumber & Box Co.* v. *State Highway Commissioner, supra,* 355, we said:

"Such decisions are predicated upon the well-recognized theory that in congested metropolitan areas with rapidly increasing population and in a dynamic, swift-moving society the interest of safe and rapid travel is sometimes paramount to the interest of the individual. *City of Pontiac* v. *Carter,* 32 Mich. 164. Recognizing the hardship caused an individual thereby, the legislature in 1893 enacted a remedial statute (Act No. 92, Pub. Acts 1893 [1 Comp. Laws 1897, § 4229 *et seq.*]) allowing compensation for damages occasioned by a change of grade where any public street or highway was constructed

* 1 Comp. Laws 1929, §§ 4481–4513 (Stat. Ann. §§ 9.1101–9.1133). —REPORTER.

either across or beneath any railroad. Subsequently, the statute was amended (Act No. 268, Pub. Acts 1909) to eliminate the requirement that the necessity be determined and damages assessed before the construction work was actually commenced (1 Comp. Laws 1915, § 4750 *et seq.*). *Mead* v. *Railroad Co.,* 174 Mich. 521. In 1931, the act was extended (Act No. 335, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 4514, Stat. Ann. § 9.1141]) to include 'the reconstruction of existing grade separations or the alteration of existing grade separations for increased highway or railroad facilities.' Plans have been prepared and a contract drawn and approved for the construction of the south abutments to the railroad grade separation structures to the east and west of plaintiff's property. By the terms of this statute, plaintiff is given an adequate remedy at law.''

We also have in mind that until the grade of a public street is actually changed the damages resulting therefrom must of necessity be speculative as unforeseen conditions may arise making it imperative to change the original plan.

The legislature, by appropriate legislation, has provided for compensation for injury due to change in street grades and has established a procedure therefor, and appellants must find their remedy therein.

Appellant further contends that it is entitled to a new trial because one of the jurors was sick and absent from deliberations for a period of one week and did not hear the instructions given to the jury by the trial judge at that time. In support of this claim it submits an affidavit of one of the jurors stating that she was not present for the particular week mentioned. The trial court in denying the motion for a new trial stated as follows:

''The court further accepts the explanation of the condemnation clerk that the jury assembled during

the absence of the juror in question, but did not deliberate. Under the circumstances, the remaining 10 would, naturally, meet and wait for the missing juror to appear, and would not be adjourned until it was apparent that the juror would not appear on that day."

In *Spencer* v. *Johnson,* 185 Mich. 85, 90, we said, "It is the universal rule that the verdict of the jury cannot be impeached by the affidavits of jurors showing misconduct in the jury room." We also said in that case (p. 91): "An examination of the authorities generally indicates that in order to warrant the granting of a new trial under such circumstances, it must be shown that the separation was prejudicial, or that the facts of the separation were such that a presumption would arise that there was prejudice, in that the juror might have been improperly approached."

Under the circumstances in this case we find no reason for granting a new trial and the judgment is affirmed, with costs to appellee.

BUSHNELL, BOYLES, CHANDLER, NORTH, MCALLISTER, and BUTZEL, JJ., concurred with SHARPE, C. J.

NORTH, J. (*concurring*). I concur in affirmance; but because of the opinion submitted by Mr. Justice WIEST I feel that our opinion should be amplified by showing more fully the manner in which appellant's case was submitted to the jury. This seems necessary because I think it clearly appears that the judge in charge of this proceeding did submit to the jury the issue of the necessity of taking appellant's property for this public improvement. The jury was instructed, in part, as follows:

"This is what is known, under our procedure, as taking of property under the law of eminent domain, and in this country we are committed to pri-

vate ownership of property, and before a person's private property may be taken, for public use, two things must be established: First, necessity for it being taken, and the court will define to you what is meant by that term; and the other is, if it be taken for public use, there must be just compensation paid for it. * * *

"The petition sets out, as the court has already said to you, the essential part, the taking of this property for 'perpetual right of way for street purposes, and temporary easement for embankment purposes.' * * *

"The first thing you do, ladies and gentlemen, is determine the question of necessity. If you find there is no necessity, as the court has told you what the term means, then that is as far as you go. You don't concern yourselves with any additional procedure, or the fixing of compensation because the determination of necessity in the negative—no necessity—ends the case and you sign the verdict roll in the proper place, as you have been instructed, * * * to that effect, and that ends the case. If, however, you find it is desirable, you find there is necessity, as the court has defined the term to you, then you proceed to fix what is termed just compensation. * * *

"Private property shall not be taken for public use, without the necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law. When private property is taken for the use or benefit of the public, the necessity for using such property and the just compensation to be made therefor, except when to be made by the State, shall be ascertained by a jury of 12 freeholders. * * *

"The determination of necessity and the award of compensation in case necessity is found is not to be made by the court, but by a jury of 12 freeholders residing in the vicinity of such property. * * *

"The question of necessity is for the determination of the jury."

The plain issue as submitted to the jury was: (1) Whether there was a necessity for taking appellant's property incident to the contemplated improvement; and (2) if necessity was established the jury was "to proceed to fix what is termed just compensation." In so submitting the case appellant's constitutional rights were fully protected. Such rights are in no way violated in consequence of the legislature having provided for a separate proceeding by which appellant's consequential damages resulting from the change made in the street grade may be ascertained. That is a matter wholly apart from taking a portion of appellant's property for the use or benefit of the public. If appellant has suffered damages in consequence of this change in the street grade, the city is entitled to have the amount of such damages determined in accordance with statutory procedure. See Act No. 114, § 9, Pub. Acts 1925, as added by Act No. 335, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 4521–1, Stat. Ann. § 9.1149).

The judgment entered is affirmed, with costs to appellee.

Sharpe, C. J., and Bushnell, Boyles, Chandler, McAllister, and Butzel, JJ., concurred with North, J.

Wiest, J. (*dissenting*). I cannot concur in the opinion of Mr. Chief Justice Sharpe.

The case at bar is not one of mere consequential damages to an abutting owner by a grade separation, for it involved taking some of defendant's property.

Section 2, art. 13, Const. of 1908, provides:

"When private property is taken for the use or benefit of the public, the necessity for using such property and the just compensation to be made therefor, except when to be made by the State, shall be ascertained by a jury of twelve freeholders."

Act No. 114, Pub. Acts 1925 (1 Comp. Laws 1929, § 4514 *et seq.*), as amended by Act No. 335, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 4514 *et seq.*, Stat. Ann. § 9.1141 *et seq.*), does not obviate the showing of necessity. That act, in case of desired separation of grades, requires the purpose and plans to be submitted to the Michigan public utilities commission and for a hearing thereon at which the railroad company and the highway authorities only are afforded a hearing. Upon such hearing, if it is found that the separation of grades is necessary for public convenience, welfare and safety, the commission may authorize, permit and provide for such separation of grades.

Section 9 of the act provides for compensation to the owners of property taken and damages incident to the grade separation in accordance with Act No. 92, Pub. Acts 1893, as amended.*

The necessity for the improvement and for taking private property for such purpose are questions for the jury and may not be exercised by the public utilities commission, and I do not understand the act purports to do any such thing.

In *Hendershott* v. *Rogers,* 237 Mich. 338, 350, we said:

"The State highway commissioner is authorized in the first instance to determine necessity and compensation, but at some stage of the proceeding an aggrieved landowner must be given his right to 'his day in court.'

* 1 Comp. Laws 1929, §§ 4481–4513 (Stat. Ann. §§ 9.1101–9.1133).
—Reporter.

"That the proviso of section 2, art. 13, dispenses with a jury or the commissioners and permits in highway cases the commissioner to hear and determine the questions takes nothing from section 1, art. 13. He is bound by it as are all other condemning parties. If our present Constitution had been silent on the question of necessity, if we still retained the provision of our Constitution of 1835, necessity would have been determined, practically, as it was in the case at bar. But under our present Constitution, an *ex parte* determination of necessity is as fruitless as would be an *ex parte* determination of compensation.

"That this court held, long ago, that necessity was, in this State, a judicial, not a legislative, question, was not that the courts sought additional labors and powers, but that obedience to the mandate of a sovereign people expressed in their Constitution was imperative. That the State highway commissioner may be hindered by this constitutional provision in his efforts to correct and improve public highways is a matter for the people themselves. But it should be observed that the changes in our later Constitutions, from that of 1835 (above set forth), made by the people, were for the very purpose of increasing the rights of the landowner whose property it is proposed to take, and to the extent that the landowner's rights were increased, to that extent those who seek to take his property are hindered.

"It follows that Act No. 352, Pub. Acts 1925,* in so far as it denies to the landowner due process of law as regards the question of necessity, fails to accord to him on that question, notice, hearing, an opportunity to defend, is unconstitutional and void."

The trial court was in error in denying the landowner the right to try the issue of necessity.

The judgment as to the appealing defendant should be reversed and a rehearing granted on the issue of necessity. Defendant should recover costs.

---

* See 1 Comp. Laws 1929, § 3884 *et seq.* (Stat. Ann. § 8.171 *et seq.*).—REPORTER.