## THOM *v.* STATE HIGHWAY COMMISSIONER.

DECISION OF THE COURT.

1. HIGHWAYS AND STREETS—CHANGE OF GRADE—RIGHT OF ACCESS—COURT OF CLAIMS.

Damages, sustained by abutting farm property owners by reason of a change of grade of State highway which seriously impaired right of access to the property, entitled owners to recovery of compensation in court of claims.

SEPARATE OPINION.

T. M. KAVANAGH, C. J., and DETHMERS and SOURIS, JJ.

2. EMINENT DOMAIN—DUE PROCESS—COMPENSATION.

*Private property may not be taken for public use without due process of law and compensation (Const 1908, art 13, § 1).*

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 18 Am Jur, Eminent Domain §§ 211, 213.
[2] 18 Am Jur, Eminent Domain § 4.
[3] 18 Am Jur, Eminent Domain §§ 131, 132.
[4] 18 Am Jur, Eminent Domain § 149.
[5] 18 Am Jur, Eminent Domain § 132.
[6] 18 Am Jur, Eminent Domain § 211.
[7] 18 Am Jur, Eminent Domain §§ 133, 211.
[8] 18 Am Jur, Eminent Domain § 213.
[9] 18 Am Jur, Eminent Domain § 282.
[10] 18 Am Jur, Eminent Domain §§ 211, 213.
[11] 18 Am Jur, Eminent Domain §§ 133, 139, 211, 214, **217.**
[12] 18 Am Jur, Eminent Domain §§ 6, 304.
[13] 18 Am Jur, Eminent Domain § 6.
[14, 15] 18 Am Jur, Eminent Domain § 145.
  49 Am Jur, States, Territories and Dependencies § **91.**
[16] 18 Am Jur, Eminent Domain § 34.
[17, 20] 18 Am Jur, Eminent Domain §§ 133, 217.
  20 Am Jur 2d, Courts § 33.
[18] 20 Am Jur 2d, Courts § 190.
[19] 20 Am Jur 2d, Courts §§ 185, 186, 231, 232.
[21] 18 Am Jur, Eminent Domain §§ 128, 129, 145, **147.**
[22] 18 Am Jur, Eminent Domain §§ 128, 129.
[23] 20 Am Jur 2d, Courts § 33.
  18 Am Jur, Eminent Domain §§ 211, 213.

3. SAME—CONSTRUCTION OF TAKING.

> Taking, as the term is used in the application of the power of eminent domain, is to be liberally construed, and should not be used in an unreasonable or narrow sense; it is not limited to the absolute conversion of property, nor applied to land only, but it should include cases where the value is destroyed by action of government, serious injury is inflicted to the property itself, or exclusion of owner from its enjoyment or from any of its appurtenances (Const 1908, art 13, § 1).

4. SAME—PARTIAL DESTRUCTION—DIMINUTION IN VALUE—TAKING.

> A partial destruction or diminution in value of property is a taking in the exercise of the power of eminent domain (Const 1908, art 13, § 1).

5. SAME—PHYSICAL INVASION—TAKING.

> A physical invasion of property need not be made in order to constitute a taking in the exercise of the power of eminent domain (Const 1908, art 13, § 1).

6. HIGHWAYS AND STREETS—GRADING—APPROPRIATION OF PRIVATE PROPERTY.

> The power to grade streets does not include the power to appropriate private property for public use.

7. SAME—CHANGE OF GRADE—TAKING.

> An owner of property is entitled to seek damages in a court proceeding where a governmental unit or agency has, without proceeding to condemn the property under the eminent domain power, so changed the grade of an abutting public road for the public benefit as to injure the property by such change, since there has been to that extent an appropriation or taking in the constitutional sense (Const 1908, art 13, § 1).

8. SAME—RIGHT OF ACCESS—PROPERTY TAKING—COMPENSATION.

> The right of reasonable access to a public thoroughfare by an abutting owner is an indefeasible right, an interest in the land concerned, for the taking of which · just compensation constitutionally is required (Const 1908, art 13, § 1).

9. SAME—CHANGE OF GRADE—DAMAGES.

> Damages resulting from the change of grade of a public thoroughfare must of necessity be speculative until the grade is actually changed, hence, where property is condemned for highway purposes damages for future unpredicted and unpredictable changes of grade would not be includable ·because of their speculative nature (Const 1908, art 13, § 1).

10. SAME—IMPAIRMENT OF RIGHT OF ACCESS—TAKING OF PROPERTY.
   *The owner of private property abutting a public way must be compensated whenever public authorities alter the grade of the public way in such a manner as to constitute a taking of a property right by impairment of the right of access, since there is a* taking *of the property for public use, overruling City of Pontiac* v. *Carter, 32 Mich 164.*

11. SAME—CHANGE OF GRADE—TAKING OF PROPERTY.
   *A change in grade of highway to which plaintiffs' farm abutted in such a way as to make the usual access to their land very difficult and which change caused a substantial diminution in the property's value constituted a partial taking without due process of law and without just compensation in violation of pertinent constitutional provision relative to the taking of property for public use (Const 1908, art 13, § 1).*

12. SAME—CHANGE OF GRADE—RELEASE.
   *"Release of any and all claims to damages arising from or incidental to the altering, widening, draining, and improving of the road and the location thereof in, over, and upon the land hereby granted," while barring claim to incidental damages assertedly incurred as a result of the grade change for which the release was given, did not preclude successor property owners from recovery of compensation for a later change of grade in the road which effectuated a partial taking of their property (Const 1908, art 13, § 1).*

13. RELEASE—COMPENSATION—TAKING OF PROPERTY FOR PUBLIC USE.
   *The release or waiver of a constitutional right to recover compensation for the taking of property for a public use must be couched in explicit language.*

14. STATES—GOVERNMENTAL FUNCTION—IMMUNITY FROM TORT LIABILITY—TAKING OF PROPERTY—DUE PROCESS—COMPENSATION.
   *The State is not immune from suit for tort committed in the exercise of a governmental function, where the action involves the taking of property without due process of law and without just compensation in direct contravention of provisions of the State's Constitution (Const 1908, art 13, § 1).*

15. SAME—TAKING OF PRIVATE PROPERTY FOR PUBLIC USE—COMPENSATION—DEFENSE OF GOVERNMENTAL IMMUNITY.
   *Constitutional requirement that just compensation be paid for private property taken for public use raises an implied liability ex contractu for such compensation, hence, defense of govern-*

*mental immunity may not be interposed in action against the State to recover such compensation (Const 1908, art 13, § 1).*

16. SAME—PRIVATE POSSESSION OF PROPERTY—EMINENT DOMAIN.

*Generally, the State may not intrude upon a citizen's lawful possession of his property, although such possession is subject to the power of eminent domain.*

17. COURTS—COURT OF CLAIMS—STATE—CHANGE OF GRADE OF HIGHWAY—CONDEMNATION PROCEEDINGS.

*Resort may be had to the court of claims for compensation for a significant diminution in the value of property abutting highway due to change of grade that seriously interfered with right of access, where proper condemnation proceedings have not been had nor covering release given, and the damage has been inflicted by the State or an agency of the State within contemplation of the court of claims act (Const 1908, art 13, § 1; CLS 1961, § 600.6419).*

SEPARATE OPINION.

BLACK, J.

18. COURTS—OPINIONS.

*The language of a decision of a court must be construed with reference to and confined to the facts of that case.*

19. SAME—OVERRULED CASES—CONSTRUCTION OF AWARD IN CONDEMNATION PROCEEDINGS.

*An opinion of the Supreme Court (City of Pontiac v. Carter, 32 Mich 164) wherein it was held that an award of compensation in a condemnation proceeding covered all damages resulting from the doing in a proper manner whatever the public authorities have the right to do, but did not cover injuries from negligence, or from trespasses may not properly be overruled in action to recover damages, brought by successor owners of abutting property which had been released to highway authorities, for a later change of grade that seriously interfered with right of access and substantially diminished the value of the farm premises in the use currently made of it.*

20. SAME—COURT OF CLAIMS—CHANGE OF GRADE OF HIGHWAY—INTERFERENCE WITH RIGHT OF ACCESS.

*Plaintiff owners of farm land abutting highway in which the grade was so changed by the State highway commissioner as to seriously interfere with right of access and diminished the value of the farm had a clear right to recover in the court of claims (CL 1948, § 691.101 et seq., as amended).*

21. STATES—CONSTITUTIONAL LAW—EMINENT DOMAIN—EX CONTRAC-
TU LIABILITY.

The constitutional guarantee of compensation to owners of pri-
vate property taken for public use raises an implied ex con-
tractu liability on the part of the agency taking the property
(Const 1908, art 13, § 1).

22. SAME—COMPENSATION.

What is recovered for the taking of private property for public
use is compensation, which presupposes a contract, express or
implied, and is not damages in the strict sense of the word.

SEPARATE OPINION.

SMITH, O'HARA, and ADAMS, JJ.

23. HIGHWAYS AND STREETS—CHANGE OF GRADE—GROSS DAMAGE—
MOTORIZED FARMING EQUIPMENT.

A change of grade in a public highway which merely causes in-
convenience or limited access to the highway is not compen-
sable, but where there is such a change of grade as to cause
gross damage by reason of practical nonaccess to the highway
by making the use of the property owners' motorized farming
equipment virtually impossible, redress is available through
the court of claims; distinguishing City of Pontiac v. Carter,
32 Mich 164 (CLS 1961, § 600.6401 et seq.).

Appeal from Court of Claims; Kane (Edward T.),
J., presiding. Submitted April 8, 1965. (Calendar
No. 12, Docket No. 50,510.) Decided December 7,
1965.

Claim by Daniel B. Thom and Ariel F. Thom
against the State of Michigan, John C. Mackie, State
Highway Commissioner, and the Michigan State
Highway Commission for alleged injuries arising
out of a change of grade on a public highway front-
ing their property. Claim dismissed. Plaintiffs
appeal. Reversed and remanded.

Atkins & Drillock, for plaintiffs.

Frank J. Kelley, Attorney General, Robert A.
Derengoski, Solicitor General, Louis J. Caruso and

*Gay S. Hardy,* Assistant Attorneys General, for defendants.

SOURIS, J.  The organic laws of the State of Michigan always have provided that private property may not be taken for public use without due process of law and compensation.[1]  One crucial question involved in the implementation of such organic provisions has been, when is property actually "taken".  This Court has been committed to a liberal interpretation of "taking", as indicated by this passage from *Pearsall* v. *Eaton County Board of Supervisors* (1889), 74 Mich 558, 561, 562 (4 LRA 193):

"The term 'taking' should not be used in an unreasonable or narrow sense.  It should not be limited to the absolute conversion of property, and applied to land only; but it should include cases where the value is destroyed by the action of the government, or serious injury is inflicted to the property itself, or exclusion of the owner from its enjoyment, or from any of the appurtenances thereto.  In either of these cases it is a taking within the meaning of the provision of the Constitution.

" 'A partial destruction or diminution in value is a taking.'  Mills, Eminent Domain [2d ed], § 30; *Pumpelly* v. *Green Bay Co.,* 13 Wall [(80 US) 166] 177; *Cushman* v. *Smith,* 34 Me 247; *Grand Rapids Booming Co.* v. *Jarvis,* 30 Mich 308.

"If the public take any action which becomes necessary to subserve public use, and valuable rights of an individual are thereby interfered with, and damaged or destroyed, he is entitled to the com-

_____

[1] See Article 2 of the Ordinance of 1787 (1 Stat 51); Const 1835, art 1, § 9; Const 1850, art 18, § 2; Const 1908, art 13, § 1; and Const 1963, art 10, § 2.  The 1908 constitutional provision, effective when the events herein occurred, provided:

"Section 1.  Private property shall not be taken by the public nor by any corporation for public use, without the necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law."

pensation which the Constitution gives therefor, and such damage or destruction must be regarded as a 'taking.' "

There need not be even a physical invasion of property to constitute a taking:

"That there may be a taking of property without actual physical invasion of it has often been held. In *Allen* v. *City of Detroit*, 167 Mich [464], 473 (36 LRA [NS] 890), Justice Steere, speaking for the court, said:

" 'Building restrictions are private property, an interest in real estate in the nature of an easement, go with the land, and are a property right of value, which cannot be taken for the public use without due process of law and compensation therefor. * * * The contention that the city, under its general police power, may ignore this building restriction, and erect its fire engine house within the restricted district, because it is necessary for the public good and to protect the lives and property of citizens in that locality, is not tenable. When such action deprives the individual of a vested right in property, it goes beyond regulation under police power and becomes an act of eminent domain governed by the appropriate condemnation laws.'

"See, also, *Schneider* v. *City of Detroit*, 72 Mich 240 (2 LRA 54).

"In *Ranson* v. *City of Sault Ste. Marie*, 143 Mich 661 (15 LRA [NS] 49), the city without physical invasion of plaintiff's property built a bridge in the street and constructed approaches thereto, seriously interfering with plaintiff's access to the street from the adjacent property and it was said by this court:

" 'Plaintiff's damage flows from the construction of an embankment by the city which has the effect to destroy, to some extent, her property. Within repeated decisions of this court, there has been a "taking" of plaintiff's property, and, if we could consider the purpose of the taking a "public pur-

pose," plaintiff was entitled, by the terms of defendant's charter, to compensation. The city has taken, without proceedings to determine either necessity or resulting damage.

" 'The term "taking" should not be used in an unreasonable or narrow sense. It should not be limited to the absolute conversion of property, and applied to land only, but should include cases where the value is destroyed by the action of the government, or serious injury is inflicted to the property itself, or the owner is excluded from its enjoyment, or from any of its appurtenances.' *Pearsall* v. *Board of Sup'rs of Eaton Co.*, 74 Mich 558 (4 LRA 143); (quoting from the syllabus)." *City of Big Rapids* v. *Big Rapids Furniture Manfg. Co.* (1920), 210 Mich 158, 174, 175.

As is evident from the passage just cited, some of the cases in which the definition of "taking" has been considered have involved injury caused the owner of property abutting upon a street by a change in the grade of the street. In a series of cases, beginning with *Schneider* v. *City of Detroit* (1888), 72 Mich 240 (2 LRA 54), the Court held that the general power to change the grade of a street does not include, for example, raising the street grade as an approach to a viaduct over a railway in such fashion that there is a concomitant injury to property abutting upon the street. Such a change in grade, the Court held, should be accomplished by means of the power of eminent domain, so that abutting owners, whose property was diminished in value and so "appropriated" by the grade change, could obtain compensation.

Thus in *Phelps* v. *City of Detroit* (1899), 120 Mich 447, 448, the city "erected a bridge over the Michigan Central Railroad tracks, which cross Fourteenth avenue adjoining the plaintiff's premises. This bridge takes up the entire width of the street, except

about five feet on each side, thus depriving the property of the benefits of the street as a street. The approaches to the bridge, which are immediately in front of the plaintiff's premises, are built of stone, iron, and earth, and vary from 10 to 40 feet in height."

In upholding plaintiff's right to compensation, the Court quoted approvingly this, and other, language of Mr. Justice Champlin in *Schneider* v. *City of Detroit, supra* (p 449):

" 'The exercise of the power to erect such bridges in streets would necessarily involve quite an amount of abutting property in damage, and some entirely in destruction, for any beneficial use or enjoyment. *Such consequences cannot be brought under the general power to grade streets, but must be provided for under the power of eminent domain. Private property cannot be appropriated for the public use without the necessity therefor is first determined by a jury under our Constitution, and compensation awarded and paid.* Doubtless the method of crossing a railroad by a viaduct is safer than a crossing at grade, and upon streets which are recognized thoroughfares, over which the public are almost constantly passing, such bridges would greatly conduce to the public safety and convenience, and it would be wise for the legislature to confer upon municipalities the authority to erect such structures in the streets, and condemn private property for that purpose, if necessary; but, until this is done by special enactment, I do not think it can be done under the power now conferred by the general authority to grade, make, repair, and improve streets.' " (Emphasis added.)

In *Ranson* v. *City of Sault Ste. Marie* (1906), 143 Mich 661, the grade of the street in front of plaintiff's dwelling was raised to accommodate approaches to a bridge over a canal. In affirming a

judgment of damages for plaintiff, the Court said (p 670):

"The general power over streets, their grades and maintenance, and over bridges and the manner in which they shall be constructed, which is usually possessed by cities and is possessed by defendant city, must be considered with reference to, and is limited by, the purposes and uses of public ways. Plaintiff's damage flows from the construction of an embankment by the city which has the effect to destroy, to some extent, her property. Within repeated decisions of this Court, there has been a 'taking' of plaintiff's property, and, if we could consider the purpose of the taking a 'public purpose,' plaintiff was entitled, by the terms of defendant's charter, to compensation. The city has *taken*, without proceedings to determine either necessity or resulting damage. *So that whether we regard the action of the defendant in erecting the bridge as within or outside of the charter powers, there has been a tortious taking of property.*" (Emphasis added.)

The fair purport of the decisions just discussed is this: if a governmental unit, which has the undoubted power to change the grade of a public road for the public benefit, demonstrably injures the property of an abutting owner by so doing, that owner's property has been to that extent "appropriated" or "taken", in the constitutional sense, and if proceedings have not been had to condemn the property under the eminent domain power, the owner is entitled to seek damages in a court proceeding.

And yet, there are cases in Michigan which seem to hold precisely the opposite. The earliest of these appears to be *City of Pontiac v. Carter* (1875), 32 Mich 164. In *Carter,* without so much as a reference to the then pertinent constitutional provision found in the Constitution of 1850, art 18, § 2, the Court,

through Mr. Justice Cooley, held that one injured
by a change in grade of an abutting street had no
cause of action for damages.[2] Several reasons were
advanced for this decision. First, the Court raised
a sort of *in terrorem* argument. For example:

"Nor, if he can maintain a suit [for damages
caused by the change in grade of an abutting street],
is it easy to assign reasons for denying the like
remedy to one whose property is diminished in value
by * * * permitting a public prison to be located
nearer to him." 32 Mich 164, 171, 172.

As to the specific instance of locating an objection-
able building near an objecting property owner,
compare the analogous situation of placing a fire
engine house in a restricted area, discussed in *Allen*
v. *City of Detroit* (1911), 167 Mich 464, 473 (36 LRA
NS 890), part of which opinion is quoted in *City of
Big Rapids* v. *Big Rapids Furniture Manfg. Co.,*
*supra.* Moreover, the *Carter* Court did not seem to
recognize that the right of an abutting owner to rea-
sonable access to the street is of a different nature,
for example, than the right, if any, of a citizen to
have his city retain its status as a county seat (32
Mich at 172). Indeed, the right of reasonable access
by an abutting owner has been characterized by
this Court as an "indefeasible right". *Goodfellow
Tire Co.* v. *Detroit Commissioner of Parks and
Boulevards* (1910), 163 Mich 249, 254. And see

---

[2] Compare this Court's holding, in which Justice Cooley joined,
with regard to the analogous situation of interference with the
rights of a riparian owner to use of a waterway:

"Neither the supervisors nor the State can directly or indirectly
appropriate the plaintiff's use of the shore to public uses without
compensation; and if even a lawful bridge and pier is constructed
so near it as to preclude its profitable use he is entitled to compen-
sation. If the bridge and pier is far enough from the dock so that
it may be used but only with inconvenience, the same principle applies,
and the question is merely of the extent of the injury." *Maxwell* v.
*Bay City Bridge Company* (1881), 46 Mich 278, 288, 289.

*Giegling* v. *Helmbold* (1959), 357 Mich 462, 464, where the Court said:

"It has long been decided law in this State that an abutting owner's right of access to a public street or alley *is an interest in the land concerned.  Horton* v. *Williams,* 99 Mich 423."   (Emphasis added.)

It follows that when a governmental unit injures that right of access, it injures a property interest, and that injury, under the holding of *Pearsall, supra,* constitutes a "taking" for which just compensation constitutionally is required.

Secondly, the Court argued in *Carter:*

"The injury in all these cases is incidental to an exercise of public authority, which in itself must be assumed to be proper, because it is had by a public body acting within its jurisdiction, and not charged with malice or want of good faith.  It must, therefore, be regarded as an injury that every citizen must contemplate as one that with more or less likelihood might happen."   32 Mich 164, 172.

Here the Court misses the point.  No one asserts that it is beyond government's authority to change a public road grade, but rather it is asserted that if the government's authorized action results effectively in taking of private property, the owner of that private property, by constitutional mandate, must be compensated.  Surely a contrary result is *not* within the actual contemplation of the average property owner, and thus the *Carter* Court's bare allegation that it is, indeed, within his contemplation prompts reference to Mr. Justice Talbot Smith's comment in *I. M. Dach Underwear Company* v. *Employment Security Commission* (1956), 347 Mich 465, 480, 481:

"Whenever the law says that what a person did, legally, is the opposite of what he did actually, that

when he shouted 'No,' what he really (legally) did was to whisper 'Yes,' then explanation is due our people that they may guard against the evils of clear speech and forthright expression."

The *Carter* Court, finally, argued that when land is condemned for highway purposes, the award given covers the possibility that the abutting property might at some unspecified future date suffer yet incalculable damages by an unpredicted and unpredictable change in grade. The mere statement of the argument disposes of it, especially in view of this statement in *City of Detroit* v. *Grigg Hanna Lumber & Box Co.* (1941), 296 Mich 415, 420: "Until the grade of a public street is actually changed the damages resulting therefrom must of necessity be speculative".

The *Carter Case* has been followed uncritically in a number of subsequent cases, none of which, significantly, expatiates upon, or even elucidates, its rationale.

Thus, for example, in *Hembling* v. *City of Big Rapids* (1891), 89 Mich 1, the Court denied recovery to a plaintiff who alleged that his land had been damaged when the grade of an abutting street had been raised. After the grade had been changed a committee of the city council assessed plaintiff $15 as the amount he had benefited from the grade change. Since plaintiff had not appealed this determination to the council, the Court held him estopped from later claiming he had, in fact, been damaged by the grade change. Quite gratuitously the Court noted, citing *Carter,* that no recovery might be had for a change of grade:

"Inconvenience may result to him, and his property be rendered less valuable, but public accommodation must prevail over his private interests." 89 Mich 1, 4.

This is a thread that warps through several of these cases, namely, that paying abutting owners for damage done to their property by a grade change would make highway improvements too expensive. See *Carter, supra.* Baldly put, the constitutionally specious argument is this: "Changing the grade of a highway will benefit the many who are the public, and may injure a few abutting landowners. It is only just, therefore, that the few should not be compensated because, after all, the many will benefit." We prefer the reasoning expressed in *Stock v. Township of Jefferson* (1897), 114 Mich 357, 360–362:

"It does not appeal to one's sense of justice to say that the exercise of a right possessed is not of as much benefit to the possessor as the taking of that right from the owner would be to the trespasser.

\* \* \*

"It is urged very earnestly by counsel that Mr. Stock's right to maintain his dam and to use the water that would naturally come to his mill must give way to the right of the public to improve the highways, to drain lands, and to generally improve the country. It is sufficient reply to this argument to say that it has long been the fundamental law of the land that a man is not to be deprived of his property without due process of law, and without compensation."

In many other cases decided after 1893 and purporting to rely upon *Carter,* the Court was not forced squarely to meet the issue of whether injury done to an abutting owner by a grade change was a compensable taking. This is because PA 1893, No 92 (CL 1948, § 253.1 *et seq.* [Stat Ann 1958 Rev § 9.1101 *et seq.*]) provided for the payment of damages resulting from a change of grade of a highway at a railroad crossing by the county, township, or city participating in the grade separation, and PA 1925,

No 114 (CL 1948, § 253.51 *et seq.* [Stat Ann 1958 Rev § 9.1141 *et seq.*]) provided for such payment by the State, county, township, city, village, board, commission or other agency participating in the grade separation.[3]  See, for example, *A. M. Campau Realty Co.* v. *City of Detroit* (1934), 268 Mich 417. There plaintiff filed a bill in chancery to restrain the lowering of a street grade at a railroad crossing until plaintiff's damages were determined.  The Court held that plaintiff had an adequate remedy at law, citing the grade separation acts, *supra,* and so affirmed the chancellor's dismissal of the bill.  Without reference to contrary holdings, for example, *Schneider* v. *City of Detroit, supra,* the Court also stated:

"We have repeatedly held that the lowering of the street grades is not the taking of abutting property without due process of law.  *City of Detroit* v. *Grand Trunk Railway of Canada,* 163 Mich 229; *Mead* v. *Michigan C. R. Co.,* 174 Mich 521."  268 Mich 417, 420.

Both of the cases cited in *Campau* involved proceedings under grade separation acts and so, in both, plaintiffs could seek compensation under those acts.

The most recent pronouncement on this general problem appears in *City of Detroit* v. *Grigg Hanna Lumber & Box Co., supra.*  There plaintiff, whose property abutted upon a street the grade of which was lowered to accommodate a railroad grade separation, appealed claiming, *inter alia,* that the amount of damages it received was inadequate.  This Court affirmed, largely in reliance upon *Grigg Hanna Lumber & Box Co.* v. *State Highway Commissioner*

---

[3] In addition, CL 1948, § 102.7 (Stat Ann 1949 Rev § 5.1812) provides whenever a street or sidewalk grade in a fourth class city be established, and an abutting owner improves his property with reference thereto, the grade may not subsequently be changed without compensation to the owner for injury thereby done him.

(1940), 294 Mich 346.   There plaintiff had filed a
bill of complaint to restrain the lowering of the
street grade and from eventual dissolution of an
issued restraining order, plaintiff appealed.   In
denying plaintiff relief, the Court said (p 354):

"As a general rule, an impairment of the owner's
right of access to his property by a change in the
grade of an adjoining street is not such a property
interest as will fall within the ambit of the constitu-
tional guaranty."

*Carter* was one of the cases cited in support of the
"rule".

The Court said further (p 355):

"Such decisions are predicated upon the well-
recognized theory that in congested metropolitan
areas with rapidly increasing population and in a
dynamic, swift-moving society the interest of safe
and rapid travel is sometimes paramount to the in-
terest of the individual."

While we might well agree that society's interests
are paramount to the individual's insofar as the lat-
ter may not, for his own convenience, prohibit a
grade change, we do not agree with the *Grigg Hanna*
Court's ruling that society may justly benefit itself
at the expense of an individual by failing to compen-
sate him for damage done to him in order to procure
society's benefit.   As Mr. Justice POTTER, who wrote
for the Court in the first *Grigg Hanna Case,* said in
his earlier concurring opinion in *James S. Holden
Co.* v. *Connor* (1932), 257 Mich 580, 596:

"It has always been a basic principle of the law
that 'If the work is of great public benefit, the public
can afford to pay for it.'   *Eaton* v. *Railroad Co.* [51
NH 504, 518 (12 Am Rep 147)]."

Moreover, it appears that the Court in the first
*Grigg Hanna Case* recognized that even in the face

of the "general rule" it cited, there might be instances where a grade change might result in a taking of the abutting owner's property. Thus the Court distinguished cases where, after the change of grade, a suitable alternative means of access to abutting property was provided, and where, therefore, no compensation could be had, from cases where "the alternative route is dangerous, poorly constructed, or manifestly inadequate". 294 Mich 346, 357.

Upon consideration of the foregoing cases, and others, we have been persuaded that sound public policy and our concept of fundamental justice, to say nothing of our constitutional mandates, require overruling the rule[4] enunciated in *City of Pontiac* v. *Carter*[5] and require, instead, recognition of the

---

[4] Lest there be misapprehension among the bench and bar regarding which rule of *Carter* we are renouncing, we state that we are overruling so much of the *Carter* opinion as subsequently has been applied by this Court to deny the owner of private property a remedy when public authorities, in the proper exercise of their power, alter the grade of a public way abutting upon such property regardless of the extent of the change in grade and its consequential effect upon the use of such abutting property. Indeed, this was the very thrust of the opening paragraph in Justice COOLEY'S opinion in *Carter*, which begins as follows (p 165):

"The weight of authority against this action is overwhelming. In the leading case of the *Cast Plate Manufacturers* v. *Meredith*, 4 Durn & E T R 794 (100 Eng Rep 1306), which, like the one before us, was an action to recover damages suffered from raising the grade of a public way, Lord Kenyon states very concisely some of the reasons which preclude a private remedy in such a case."

The only rational conclusion one can reach concerning the meaning of the *Carter Case* is that the Court was laying down a general principle, and as we have noted *supra*, our subsequent cases have treated the principle as a general one applicable to deny the existence of a legal remedy regardless of the extent of the grade change and its consequential effect upon abutting landowners so long as the change in grade be not accomplished negligently or by trespass. It is that rule, or general principle, which we would overrule so that even absent negligence or trespass, the owner of private property abutting a public way must be compensated whenever public authorities alter the grade of the public way in such a way as to constitute a taking of a property right.

[5] While my Brother BLACK in his opinion demonstrates how Justice COOLEY distinguished *Carter* in his opinions in *Ashley* v. *Port Huron, infra,* and *Buskirk* v. *Strickland* (1882), 47 Mich 389, Justice

fact that when a governmental unit changes the grade of a highway in such a way as to diminish the value of an abutting owner's property by impairment of his right of access to that highway, that owner's property has, to the extent of the diminution in its value, been "taken" for the public's use, thereby entitling the owner to just compensation therefor.

We turn now to the facts of the case before us.

Daniel and Ariel Thom own 80 acres of land in Burnside township, Lapeer county, with a frontage of 80 rods on highway M 53. On this land are located their home, farm buildings and farm machinery. In addition to these 80 acres the Thoms own an aggregate of 258 acres in four separate areas in Burnside township. The M 53 site serves as headquarters for a farming operation involving all of this land.

The Thoms purchased the M 53 site in 1939, and in subsequent years improved it by the erection of a home and farm buildings and by landscaping. Situated some 125 feet back from M 53, and about two feet above the grade of that highway, the attractive farm home was regarded as somewhat of a local showplace.

Highway M 53 runs north and south in front of the Thom home, and access was had to it by means of a U-shaped driveway which encircled the home and intersected M 53 at two points.

In 1961 the State highway department began to improve M 53 and this involved an alteration of the

BLACK makes no effort to defend the rationale of *Carter* except to note that the then pertinent constitutional prohibition against the taking of private property for public use without due process and compensation was not argued to the Court. While Justice COOLEY shall remain in the regard of all thoughtful observers of the American judicial scene one of the wisest and most skillful jurists produced by this nation, his preeminence should not immunize his opinions from critical scrutiny and when, on predictably remote occasions, even he may be found to have erred, our Court should not abdicate its duty to say so, forthrightly.

grade in front of the Thom home property. When construction was completed, the grade of M 53 was 10 feet higher than the Thom drive at its southern intersection and eight feet higher than the drive at its northern intersection, leading one witness to testify that "it looks as though they built in a hole". In addition the grade along the frontage of the Thom property from almost its southern boundary was substantially raised, and the highway grade was not level again with abutting property until approximately 400 feet north of the existing north drive.

Because of the grade change, Thom has great difficulty in moving his farm machinery off the 80-acre site which, of course, is necessary because of the scattered tracts involved in his farming operation. Mr. Chaffin, project engineer for the State highway department, agreed that the present access from the Thom property to M 53 is "pretty bad". The State highway department's appraiser testified:

"*A.* I don't think it is advisable for any property owner to be going in and out of those [drives].
"*Q.* Why?
"*A.* Dangerous.
"*Q.* Because of the steep incline?
"*A.* That's right."

Because of this state of affairs the Thoms filed suit in 1961 in the court of claims seeking recompense. Testimony, including the above, was taken, and it is undisputed that the Thom property was lessened in value as a result of the grade alteration, a witness for the State estimating the diminution of value at $5,200 and a witness for the Thoms estimating it at $23,000. Nonetheless that court dismissed the Thoms' claim, reasoning (1) that the change of grade, being within the existing right-of-way, gives rise to no damages compensable under the Constitu-

tion or laws of Michigan; (2) that the Thoms were barred from seeking damages by a release of right-of-way executed by their predecessors in title, which release provided that: "This conveyance includes a release of any and all claims to damage arising from or incidental to the altering, widening, draining, and improving of the road and the location thereof in, over, and upon land hereby granted"; and (3) that the State is immune from liability for acts committed in the performance of a governmental function.

The first ground is disposed of by our prior discussion. On the facts of this case it is undisputed that the change in the highway grade made the usual access to plaintiffs' land very difficult, and caused a substantial diminution in the property's value, and we therefore hold that there was a partial taking of plaintiffs' property without due process of law and without just compensation in violation of the then pertinent constitutional provision, Const 1908, art 13, § 1.

Neither are plaintiffs barred from redress by the language contained in the release executed by their predecessors in title, for which release plaintiffs' predecessors received the sum of $20.56. This language indeed bars plaintiffs' claim to incidental damages assertedly incurred as a result of the grade change. However, the nature of the grade change was such as to effectuate a partial *taking* of their property, and for this they are entitled by our Constitution to *compensation*. Certainly the release would not deprive plaintiffs of their constitutionally guaranteed compensation if the State had physically taken part of their property to widen the highway. So neither does the release bar them in the presented circumstances where there has also been a compensable taking. Before we will find that a party has waived a constitutional right, more explicit language must be present than is found in this release.

Finally, it is argued that in any event this suit for damages in the court of claims is barred because of the State's immunity from tort suits. However, in this case of Thom there was a taking of part of the Thoms' property without due process of law and without just compensation in direct contravention of the provisions of the State's Constitution. As my Brother Black notes in his opinion, that same constitutional provision imposes upon the State an implied liability *ex contractu* for such compensation. To permit the State to assert the defense of governmental immunity in such circumstances would be utterly to vitiate the constitutional provision providing for just compensation for the taking of private property for public use, for it would mean that the owner of property alleged to have been taken without compensation would be left without judicial recourse. It is the general rule that even the State may not intrude upon a citizen's lawful possession of his property (*Ashley* v. *City of Port Huron* [1877], 35 Mich 296, 300; *Herro* v. *Chippewa County Road Commissioners* [1962], 368 Mich 263, 272). While the citizen's possession is subject to the power of eminent domain, it would be absurd and contrary to the explicit guarantee of the Constitution to say that if the State takes property without giving the required compensation, it thereby becomes immune from any suit to obtain that compensation.

We conclude, then, that when a governmental unit changes the grade of a highway in such a way as either to destroy or to interfere seriously with an abutting owner's right of access to that highway, and such interference results in a significant diminution in the value of the property, then there has been a taking of the property to that extent, and if proper condemnation proceedings have not been had, resort may be had to the court of claims for compensation where the governmental unit is the

State or an agency of the State within contemplation of the court of claims act. CL 1948, § 691.119 (Stat Ann 1959 Cum Supp § 27.3548[19]). See, currently, CLS 1961, § 600.6419 (Stat Ann 1962 Rev § 27A.6419).

Reversed and remanded for further proceedings. Costs to appellants.

T. M. KAVANAGH, C. J., and DETHMERS, J., concurred with SOURIS, J.

KELLY, J., concurred in result.

BLACK, J. (*for reversal*). I cannot agree with Justice SOURIS' criticism of and motion to overrule the "rule" of *City of Pontiac* v. *Carter,* 32 Mich 164. Such criticism is both wrong and unnecessary. I do agree that *Pontiac* has been applied, loosely and uncritically, in the more recent cases cited by Justice SOURIS, and I agree for reasons to be stated that the judgment of the court of claims should be reversed.

This case is typical of too many where a court of final appeal, having examined a mature precedent for the primary purpose of overruling it, makes bad law. Now surely, when a decision of a court of final resort is said by one party to be applicable either in bar or sustenance of recovery, and is said by an opponent party to be wholly inapplicable, that decision should first receive painstaking consideration in the light of the *facts and issues* which formed the basis of what was written by that Court. I have written to the point in greater detail for the case of *Bauman* v. *Grand Trunk W. R. Co.,* 376 Mich 675 and refer simply to this example, taken from *Wolcott* v. *Holcomb,* 97 Mich 361, 368:

"It has often been said by this and other courts that the language of a decision must be construed

with reference to and confined to the facts of that case."

*City of Pontiac* v. *Carter,* 32 Mich 164, is the specific target at which Justice Souris has aimed his latest arrow of overrulement. Two years after it was handed down *Pontiac* was cited to and expressly distinguished by the Court (*Ashley* v. *City of Port Huron,* 35 Mich 296). The same thing occurred five years after release of *Ashley* (*Buskirk* v. *Strickland,* 47 Mich 389). On all three occasions (*Pontiac, Ashley* and *Buskirk*) Justice Cooley wrote for the unanimous Court. In *Buskirk* the Justice distinguished *Pontiac* in these specific terms (pp 391, 392):

"The question, then, is not whether this plaintiff could have complained of consequential injury from the legitimate improvement of the street: *City of Pontiac* v. *Carter,* 32 Mich 164; nor whether after so great a lapse of time the offered dedication could be accepted; but it is whether the authorities, without distinctly evincing an intent to accept, can enter upon the premises and remove with impunity the lateral support of adjacent grounds to the injury of their owners. And we are all of opinion that they have no such right. The question of the right to the soil within the limits of the platted streets, if the village authorities had seen fit to accept the offered dedication, does not arise upon this record."

I shall come to *Ashley* later.

Justice Souris points out that the Court, in *Pontiac,* made no reference "to the then pertinent constitutional provision found in the Constitution of 1850, art 18, § 2." That is quite true. The reason, appearing clearly from the opinion of *Pontiac* as well as from her brief on appeal, is that Mrs. Carter made no claim under that constitutional provision. Hence that provision was not mentioned by Justice

COOLEY. Instead, the plaintiff relied exclusively upon cases from other jurisdictions, notably Ohio, which provided a common-law right of recovery upon the theory (p 168) "that for any injury occasioned to an adjoining lot-owner by a change in the grade once established for a street an action will lie." What was specifically and solely decided in *Pontiac* was that "no action would lie against a municipal corporation or body for an injury resulting from a *lawful exercise* of its legislative authority." The quotation is taken from *Pontiac* at 170. The emphasis is mine.

In this case of Thom, however, as in *Ashley* and then in *Buskirk,* what in fact was done by the defendant State highway commissioner has been found not to be "a lawful exercise of legislative authority." Rather, the specific question of "taking" having been raised, we now conclude on motion of Justice SOURIS that when a governmental unit changes the grade of a highway in such way as to either destroy or seriously interfere with an abutting owner's right of access to that highway, and that interference results in a significant diminution in the value of the property, then there has been a taking of the property to such extent, and if proper condemnation proceedings have not been had, the owner has a remedy by force of the constitutionally guarded property right (Const 1908, art 13, § 1; Const 1963, art 10, § 2).

In its essence the specific rule of *Pontiac* appears in the summation (p 172). It is that the plaintiff's damages, as alleged by her in that case, were covered by the original award of compensation, "except such as may result from an improper or negligent construction of the public work, or from an excess of authority in constructing it." Justice COOLEY went on: "In other words, the award covers all damages resulting from the doing in a proper manner

whatever the public authorities have the right to do; but it does not cover injuries from negligence, or from trespasses."

Now it is this quoted rule of law which Justice Souris would overrule. Believing that it is fully as valid today as when written in 1875, I stand by it. Indeed, one may perceive with no difficulty that the Court, should it overrule *Pontiac,* will some day find its membership confronted by facts and contentions duplicating what it was called upon to consider in *Pontiac.* What then will the Court do? Overrule Thom, or ignore Thom by applying *Pontiac?* Or, unwilling to admit error, will the Court write that *Pontiac* and Thom are both distinguishable for some trifling reason?

Now let us examine the facts presented and contentions made in *Pontiac* which allegedly require overrulement of *Pontiac* or application thereof in bar of the Thom claim. In *Pontiac* the Court had before it a repetitiously specific allegation by Mrs. Carter, and proof in support, that the defendant city did "wrongfully enter upon said Saginaw street, and with shovels, hoes, plows, and scrapers, et cetera, filled in, raised and regraded, or caused to be filled in, raised and regraded with earth, stones, timber and other material, said Saginaw street *to the depth of two feet,* to wit: at the city of Pontiac, county of Oakland aforesaid." No impairment of access to the sidewalk and street in front of her property was claimed by Mrs. Carter. She did claim that her "business and occupation of an inn, or hotel keeper," had been damaged and injuriously affected by the acts of the city. That she might have claimed before this Court that the acts complained of amounted to an unconstitutional "taking" of her property is beside the point. She did not, choosing instead to rely upon the mentioned Ohio rule.

In Thom, on the other hand, it has been shown that the grade of trunkline highway M 53 was raised vertically *10 feet* with result that no motor vehicle —farm or otherwise—may enter upon the pavement of the trunkline, from plaintiff's farm as before, without serious risk of automotive collision occasioned by customary trunkline speeds and particularly by a want of requisite vision, both ways on and along M 53, before entry thereon.   There is no ground, these variant circumstances considered, upon which it may be argued seriously that *Pontiac,* if not overruled, would apply in bar of the present claim.

It becomes increasingly clear that our legal ancestors, from as far back as John Marshall's time, have had good reason for warning against application of what modern students call the "rationale" of a case without careful scrutiny of the fact-setting thereof.[1]   An elevation of the grade of a city street to the extent of two feet, that only without proof of an actionable trespass, especially when done in the days of horse-drawn vehicles and wooden sidewalks, could hardly be termed a "taking" of abutting property even if the constitutional point had been pressed on the COOLEY Court.   Now does *Pontiac's* rationale (reasoning to decision of a case *as presented,* I call it), written as it was by Justice COOLEY, need any defense?   If the Justice were here, writing with us, would he say that *Pontiac* had any present application should the Court fail to overrule it?   Look again at what he said, of *Pontiac,* in *Ashley* and *Buskirk.*

The proof adduced by the Thoms establishes both an actionable trespass (see application of the *Ashley Case* in *Herro* v. *Chippewa County Road Commission,* 368 Mich 263)[2] and a taking from them of a

---

[1] *Cohens* v. *Virginia,* 6 Wheat (19 US) 264, 399 (5 L ed 257, 290).— REPORTER.

[2] Justice COOLEY wrote in *Ashley,* of *Pontiac,* that the plaintiff's

valuable property right; that of direct distinguished from a circuitously expensive right of access to the highway which fronts their farm with result of diminution of value of the farm. In the absence of contrary proof, and so far there is none, they have a clear right to recover in the court of claims.[3]

The most formidable defense is posed by the attorney general's counterstated question No 3. The question:

"Does the doctrine of sovereign immunity from tort liability bar recovery in an action *ex delicto* in the court of claims where damages resulting from a highway grade change are sought?"

The supreme courts of North Dakota and Alabama have met this question as I would meet it. The fallacious premise above is "immunity from tort liability," citing *McDowell* v. *State Highway Commissioner,* 365 Mich 268; whereas and as presently found there has been a taking of plaintiffs' property to the extent of the damage done thereto, for which the defendants became liable, impliedly *ex contractu,* by force of the cited constitutional mandate.

The specific defense—posed by said question 3— seems to have arisen first in *Mayer* v. *Studer & Manion Co.,* 66 ND 190 (262 NW 925). There and

premises (p 297) "were in no way invaded." Here, aside from all else, there is undisputed proof that the Thom farm actually was invaded when the grade of highway M 53 was altered from a height below—to an extreme height above—the original driveway which led from the farm to the adjacent highway. It was shown that a quantity of the "spoil," from the grade fill, was pushed over the Thoms' fence a lateral distance of some 2 or 3 feet and a longitudinal distance of about 100 feet; that "a lot of silt washed on our garden from the road" as a result of the change of grade; that approximately 200 feet of Thom farm fence was buried which the Thoms had to dig up and re-erect and, according to plaintiff Daniel B. Thom: "There used to be a natural water course on the road right-of-way, and they filled that until it comes way over onto my property, and the water has come back onto me."

[3] See CL 1948, § 691.101 *et seq.,* as amended (Stat Ann 1959 Cum Supp § 27.3548[1] *et seq.*).—REPORTER.

in corresponding factual circumstances the court ruled (p 195):

"Since the Constitution guarantees the right to compensation, this obligation is in effect an implied contract on the part of the State to compensate for the damage which it has caused. The State has consented to be sued in cases 'arising upon contract' (CL 1913, § 8175), which includes implied as well as express contracts. *Ford Motor Co.* v. *State,* 59 ND 792 (231 NW 883)."[4]

Some three years later the *Mayer Case* was followed in *Jacobson* v. *State,* 68 ND 259 (278 NW 652). There the property owner alleged in her complaint that the defendants (p 261) "tore up, rebuilt and reconstructed said Elk street and Ohio avenue as they pass in front of and to the side of plaintiff's property and greatly and materially changed the grade of said streets so that plaintiff's property was greatly damaged, plaintiff's access to the streets destroyed, and greatly injured the value and usability of said property and greatly depreciated its value." Demurrers to the complaint were sustained and the plaintiff appealed. The North Dakota supreme court, having cited and quoted from the *Mayer Case,* went on to apply it in these words (p 262):

"Plaintiff does not claim the defendants had no right to change the grade. When they did so the result cannot be said to be a trespass, even though injury is done to the property. It becomes, if anything, a taking or appropriation of property for public use, and the State or a municipality, in taking private property for public use, acts in its sovereign

---

[4] When the instant statement of claim was filed in the court of claims, plaintiffs had a right to rely upon a promise by the State, implied in law, "to pay all just damages sustained by plaintiff." (CL 1948, § 611.1 [Stat Ann § 27.651]). For the current provision, see section 6655 of the revised judicature act (CLS 1961, § 600.6655 [Stat Ann 1962 Rev § 27A.6655]).

capacity, and not as a trespasser. What is recovered is 'compensation,' which presupposes a contract, expressed or implied. It is not damages in the strict sense of the word. See *Schilling* v. *Carl Township,* 60 ND 480, 489, 491 (235 NW 126, 129, 131)."

The most recent North Dakota case is *Donaldson* v. *City of Bismarck,* 71 ND 592, (3 NW2d 808). There, on petition for rehearing, the defendant city raised this question (p 606):

"That this is an action for damages in tort and not an action in condemnation proceedings."

The Court ruled (pp 609, 610):

"The provisions of section 14 of the [1889] Constitution[5] are not restricted to eminent domain proceedings. They are applicable as well where private property has been taken or damaged without the consent of the owner, and where no condemnation proceeding has been brought. It is well settled that in such case the constitutional guarantee may be invoked, and the owner may maintain an action to recover just compensation for the property taken or the damage inflicted. [Citing authorities at length, including *Mayer* and *Jacobson.*] * * *

"In *Mayer* v. *Studer & Manion Co.* [66 ND 190, 195 (262 NW 925, 927)], this court said: 'Where the State or an agency thereof acting in a sovereign capacity takes or damages private property for public use without legal exercise of the power of eminent domain, the aggrieved party may recover compensation for the property thus taken or compensation for the damage to his property thus inflicted.' "

Turning now to Alabama. The latest and most exhaustively written case there is *Hunter* v. *City of Mobile,* 244 Ala 318 (13 So 2d 656). The court ruled

---

[5] Section 14 is North Dakota's guaranty of just compensation for the taking of private property for public use.

that where a municipality takes or injures private property for a public purpose without having instituted condemnation proceedings and without having paid just compensation to the owner, right of suit will lie upon a legally implied contract for payment of such compensation. Citing carefully assembled authority to the point, exemplified by the text of 4 Am Jur, Assumpsit, § 14, pp 503, 504, the Alabama supreme court said (p 322):

"We think the reasoning sound and entirely applicable to the instant case. When private property is either taken or damaged for public purposes, the Constitution is a guarantee to the owner that he shall have just compensation therefor. The municipality thus takes or injures the property with the knowledge of this guarantee and must be held to an implied agreement to abide by its terms. It is in a sense a constitutional contract made for the benefit of private property owners, and it is entirely reasonable to imply a contract on the part of the municipality in the instant case to pay the person injured a just remuneration for the damages sustained as a consequence of this public improvement, just as the Constitution guarantees."

Of special significance is the recent addition to the text of American Jurisprudence. See 18 Am Jur, Eminent Domain, § 380, p 1022, and 1965 pocket supplement (p 189) showing insertion of the following at beginning of said section 380:

"In most jurisdictions constitutional provisions that private property shall not be taken without just compensation being made therefor have been held to be self-executing. Where this view prevails, it has been held that consent of the State to a suit against it arising under such provision is not a necessary prerequisite, and, in addition, many courts have held that in the absence of statutory remedies common-law remedies appropriate for the recovery of dam-

ages resulting from the taking or damaging are available to implement the self-executing constitutional provision."

In view of the court of claims act (CL 1948, § 691.101 *et seq.*; CLS 1961, § 600.6401 *et seq.* [Stat Ann 1962 Rev § 27A.6401 *et seq.*]), waiving the State's immunity from suit, we are not called upon now to determine whether the constitutional *prohibition* against "taking" of private property for public use is self-executing, within the quoted new text. That text is pertinently meaningful nevertheless, as indicating judicial assurance that no one, not "even the State," can "take" without having to pay according to the forms and remedies of law.

I concur in reversal and remand.

O'Hara, J. (*for reversal*). I accept the opening statement in appellants' brief except to note that where appellants use "may" in the last sentence of the subsequently quoted paragraph, I would substitute "is":

"We would first like to make clear that this is not a case where appellants are before this Court seeking redress for a change of grade which would cause inconvenience or limited access to the highway. We agree that a change of grade which merely causes inconvenience or limited access to the highway may [is] not be compensable."

Thus I conclude that the issue in this case is not the same as that involved in *City of Pontiac* v. *Carter*, 32 Mich 164. Hence, I do not share Mr. Justice Souris' view as to the necessity that it be overruled.

It is the facts in this case that adequately distinguish it from *Pontiac, supra.* The gross damage by reason of practical nonaccess to the highway, the rendering of the use of appellants' motorized farm-

ing equipment virtually impossible, are among those facts. This is not a case of mere inconvenience and limited access. It is on its facts, as Justice SOURIS and Justice BLACK both conclude, a constitutionally prohibited taking of private property without compensation. Redress is available through the court of claims.[*]

I vote to reverse and remand for further proceedings but I do not vote to overrule *Pontiac, supra.*

SMITH and ADAMS, JJ., concurred with O'HARA, J.

---

[*] See, currently, CLS 1961, § 600.6401 *et seq.* (Stat Ann 1962 Rev § 27A.6401 *et seq.*).—REPORTER.